ROCKINGHAM, FEBRUARY TERM, 1821.

JEREMIAH MEAD *et a. vs.* JOHN HARVEY.

An execution issuing against the goods and estate of a person deceased in the hands of his executor or administrator, may be extended upon lands which were of the deceased.

THIS was a writ of entry, brought to recover a tract of land in New-Market, in this county, in which the demandants

counted upon their own seisin within twenty years, and upon a desseisin by the tenant.

The cause was tried here at February term, 1820, upon the general issue. It was admitted by the parties, that one *Benjamin Mead* was once seized of the demanded premises; and it appeared in evidence that the said *Benjamin Mead,* having made his will, and appointed *Sarah Mead* his executrix, died in 1807; that the said *Sarah,* having caused the said will to be duly proved and allowed, took upon herself the burthen of executing it; that one *Philip Chesley,* having recovered judgment against the said *Sarah Mead,* executrix as aforesaid, and obtained an execution running against the goods and estate of the said *Benjamin Mead,* deceased, in the hands of the said *Sarah,* caused the same execution to be extended upon the demanded premises; and that *Philip Chesley,* by deed, on the 23d of July, 1819, conveyed the same premises to the demandants.

A verdict was taken by consent, subject to the opinion of the court upon the validity of the said extent.

*Cutts* and *Mason,* for the demandants.

*French* and *Smith,* for the tenant.

RICHARDSON, C. J., delivered the opinion of the court.

The question which this case presents for our decision is, whether an execution running against the goods and estate of a person deceased, in the hands of his executor or administrator, can be extended upon the lands which were of the person deceased?

It is very clear, that at common law, there was no way by which a creditor could reach the lands of his deceased debtor by an action against his executor or administrator. All chattels, real and personal, went to executors and administrators, and were in their hands assets for the payment of debts; but as soon as the personal estate was exhausted in a due course of administration, a plea of *plene administravit* was a good answer to any action that could be brought against them. They were liable to the amount of the personal estate only, and had nothing to do with the lands.(1) At common law, lands immediately descended to the heir and

(1) Comyn's Dig. Assets C. Lovelass 21— 51.—Went. Ex'r. 52—85. Shep. Touchstone 469.

became assets in his hands to satisfy debts, to the payment of which the ancestor had bound his heir.(1)    And the statute of 3d W. & M. cap. 14, made real estate in certain cases assets in the hands of devisees to pay bonds and other specialties, in which the deceased had bound himself and heirs, and an action was given against the heir and devisee jointly. *Lovelass* 93.—7 *East* 128, *Wilson vs. Knubley.—Comyn's Dig. Assets A.*—1 *Strange* 665, *Buckley vs. Nightingale.*—1 *D. & E.* 454, *Shittleworth vs. Neville.*—2 *Saund.* 7, *note* 4.

Upon recognizances at common law, when the connusor was dead, in order to reach the land, the scire facias lay only against the heir, or the person to whom the connusor had conveyed the land.    *Shep. Touchstone* 359.—2 *Saunders* 6.

The extent of an execution running against the goods and estate of a person deceased, in the hands of his executor or administrator, upon lands in the hands of his heir or devisee, is utterly unknown to the common or statute law of England. If then there is any law that will warrant such an extent in this state, it is certainly not one which our ancestors brought with them from that country.

By the provincial act of 13th Anne, cap. 42, entitled " an " act relating to executors and administrators," it was enacted, " that all writs of attachment and execution shall run " only against the goods or estate of the person deceased in " the hands of the executor or administrator, and not against " their bodies, &c. ; and where judgment and execution " shall be awarded for any debt or legacy to be paid in " money, and the executor or administrator hath not money " of the testator's or intestate's as assets in his hands, the " sheriff shall levy the goods or estate of the deceased, and " expose the same to a public sale for money, at the best " rate and value that he can, and thereout pay such legacy " or debt, &c., or else shall pay and satisfy the creditor or " legatary out of the goods or estate levied, if he see cause " to accept the same at the value in money upon a due and " equal appraisement made by sufficient persons upon their " oaths, to be indifferently named and appointed for that " purpose."(2)

Mead et al.
*vs.*
Harvey.

(1) Comyn's Dig. Assets A. Lovelass 93.— 2 Tidd's Prac. 853.—Shep. Touch. 66.— Rob. on Frauds 596—608.— Buller's N. P. 175.

(2) Prov. Laws 53—55.

By the provincial act of 4th George I., cap. 66, entitled " an act for making of lands and tenements liable to the pay- " ment of debts," it was enacted, " that all lands and tene- " ments belonging to any person in his own proper right in " fee, shall stand charged with the payment of all just debts " owing by such person, as well as his personal estate, and " shall be liable to be taken in execution for satisfaction of " the same, &c. Also, where the goods or chattels belong- " ing to the estate of any person deceased, shall not be suffi- " cient to answer the just debts which the deceased owed, " or legacies given, and the same appearing to the judge of " the probates of this province, the said judge is hereby em- " powered to license and authorize the executors and ad- " ministrators of such estate to make sale of all or any part " of the houses and lands of the deceased," &c.

These are believed to have been the only provincial acts on the subject now under consideration, and they have been repealed, and other statutes substituted, which are still in force.

Our statute, entitled " an act for the settling of testate " estates," sec. 14,(1) declares, " that every executor shall " make payment of debts and legacies of the testator in specie, " if such he hath as assets in his hands, and if he hath not the " same he shall expose the estate to the creditors and lega- " tees to take satisfaction thereof at their election, the value " of such estate to be ascertained by appraisers mutually " chosen and sworn ; and when judgment and execution shall " be awarded for any legacy or for a debt due from the tes- " tator, the same proceedings shall be had thereon as the " law does or may hereafter direct for levying and satisfying " executions in other cases."

(1) 1 N. H. Laws 202.

The statute entitled " an act ordering the descent of intes- " tate estates, and empowering the judge of probate to settle " the same accordingly," sec. 24,(2) contains similar provis- ions in relation to debts and executions against intestate estates. The last mentioned statute, sec. 23, declares " that " all writs of attachments and executions shall run only a- " gainst the goods or estate of the party deceased in the hands

(2) 1 N. H. Laws 213.

"of the administrator and not against his body."(1) The act for the settling of testate estates contains a similar provision in relation to executors.(2)

The statute of February 15, 1791, provides " that all lands " and tenements belonging to any person in his own proper " right in fee, shall stand charged with the payment of all just " debts owing by such person, as well as his personal estate, " and shall be liable to be taken in execution for satisfaction " of the same."(3) By the statute of February 3, 1789, sec. 2,(4) it is enacted, " that the real estate shall stand charge- " able with the debts of the deceased over and above what " the personal estate shall be sufficient to pay." And by the statute, entitled " an act empowering the judge of probate to " grant license to sell real estate in certain cases," it is enacted, " that where the personal estate of any person deceased " shall not be sufficient to answer the just debts which the " deceased owed and legacies given, the judge of probate is " hereby empowered to license and authorize the executors " or administrators of such estate to sell so much of the real " estate of the deceased as will satisfy the just debts which " the deceased owed at the time of his death, and legacies be- " queathed by his last will and testament."(5)

Such are the provisions of our statutes now in force on this subject; and we are inclined to think that if a construction were now for the first time to be given to them, we should be of opinion that they did not authorize the extent of an execution, running against the goods and estate of a person deceased in the hands of his executor or administrator, upon lands. We should have supposed that the real intention of the legislature was, that every man's estate, both real and personal, should be liable to be taken upon execution at any time during his life; but that after his death his real estate should stand charged with the payment of his debts only in case of a deficiency of personal estate, and to the amount of such deficiency, and that such deficiency was to be supplied by a sale of real estate authorized by the judge of probate, after notice given to the heirs at law, and a hearing of the parties interested. And we were not a little surprised,

Mead et al. *vs.* Harvey.

(1) 1 N. H. Laws 213.
(2) 1 N. H. Laws 199.

(3) 1 N. H. Laws 181.
(4) 1 N. H. Laws 207.

(5) 1 N. H. Laws 215.

44

Mead et al.
*vs.*
Harvey.

(1) Mass. Col.
and Prov.
Laws 216, 377,
and 413.

(2) Mass. Col.
and Prov.
Laws 620.

(3) 2 Co. 17,
Lane's case.

when we first examined our statutes on this subject, that a different construction should ever have been put upon them. But upon further investigation, we found that our provincial acts had been copied from provincial acts of Massachusetts,(1) and that those acts had there been construed to authorize extents of this kind. For in 1759, the legislature of that province passed the act of 32d George II., cap. 271, in which, after a preamble reciting that " whereas some doubts " and questions have arisen upon the construction of some " parts of an act, entitled " an act relating to executors and " administrators," whether by force of the same, real estates " of the testators and intestates may be taken in execution " for the satisfaction of judgments recovered against their " estates in the hands of their executors and administrators," &c. it was enacted, " that real estates of any testators or " intestates are and shall be liable to be taken and levied " upon by any execution issuing upon judgments recovered " against executors and administrators in such capacity, " being the proper debts of the testators or intestates."(2) And it is certain, that an opinion has for a long time prevailed very generally in this state that such extents were valid, and it is believed that their validity has never before been called in question in any of our courts. Many such extents have been made within the last twenty years, and are the only foundation upon which the titles to many estates rest. It was said by Lord *Coke*, that " the judges in general " cases have great respect and consideration that their judg- " ments shall not impeach the estates and inheritances of " many men against ancient and common approbation."(3) The remark is full of wisdom and sound sense, and the principle applies with all its force to the question now before us. If, by a new construction, we should defeat the titles of the many inheritances which rest upon extents of this kind, much inconvenience, injustice and mischief must be the necessary consequence. And we are of opinion, that however erroneous the construction of these statutes might now be thought to be, the long and uninterrupted usage, common understanding and general acquiescence have made it the

true construction, and that it must now be considered as settled, that an execution running against the goods and estate of a person deceased, in the hands of his executor or administrator, may be extended upon lands, and that lands must for that purpose be considered as estate in the hands of executors and administrators.

We have not, however, come to this conclusion until after a careful examination of the remedies which the law will afford to heirs and devisees, whose lands may be thus taken. And in the first place, we entertain no doubt that heirs and devisees may redeem lands thus taken, in the same manner that debtors may redeem their lands which have been taken in execution. In the next place, if executors and administrators permit the lands of their testators and intestates to be taken in execution, when they have sufficient personal estate in their hands, it is unfaithful administration, and a breach of the condition of their bonds. This is a necessary consequence of the provision of the statute, which has made the personal estate chargeable with the debts in the first instance, and the real estate chargeable only in case of a deficiency of personal assets. 4 *Mass. Rep.* 654, *Mitchell vs. Lunt.*—4 *ditto* 354.—10 *ditto* 450.—9 *ditto* 376.