# W. T. Heydock's Appeal from a Decree of the Judge of Probate.

Personal property in general has no locality, but is subject to the law which governs the person of the owner.

But real estate is exclusively subject to the laws of the government within whose territory it is situated.

Where, however, an executor of one whose domicil was here, had taken out ancillary administration in another state, and upon a final settlement of his accounts there, a balance arising from the proceeds of a sale of land there made under an authority given by the laws of such other state, was found in his hands, for which balance the court there in which it was settled ordered him to account here, it was *held* that he was accountable for such balance as personal property in this state.

Martha Porter, having made her will, and appointed Heydock, the appellant, executor, died at Hanover, in this county, the place of her domicil, in the year 1825.

Heydock caused the will to be proved, and allowed by the judge of probate in this county, on the 27th May, 1825, and took upon himself the burthen of executing it.

The said Martha Porter having died seized and possessed of certain real and personal estate in the state of Vermont, the said Heydock took out letters of administration with the will annexed, in the county of Orange, and district of Bradford, in Vermont.

On the 8th March, 1834, the said Heydock's account of his administration in Vermont was settled in the supreme court of probate of that state, and a balance of $7,145 33 found in his hands; and thereupon it was ordered by the said supreme court of probate, that said Heydock should pay the said sum of $7,145 33 to such persons and in such proportions as the probate court in this state, where the will was originally proved, should designate and direct.

The said sum of $7,145 33 was the proceeds of the sale of real estate of the said Martha Porter, in Vermont, which had been sold by the said executor, except $289 57, being the proceeds of the sale of personal estate.

Some of the heirs of the said testatrix resided in this state at the time of her decease, but all the heirs now reside in the states of New-York and Rhode-Island.

The estate of the said Martha in this state was administered in the insolvent course, and the list of claims against the estate, as allowed by the commissioners, amounted to $806 32.

In April, 1834, Heydock's account of his administration in this state was settled in the probate court in this county.

He was charged with the sum of $334 88 by him received in this state, and allowed the sum of $125 57 for his charges against the estate, leaving a balance in his hands of $209 31, to which was added the sum of $7,145 33, the amount found due from him in Vermont, and the decree of the judge of probate charged him with the sum of $7,354 64 as the whole balance in his hands. From this decree he appealed to this court.

*Bell*, for the appellant. The question is, whether the executor is chargeable in this state for the avails of real estate sold in Vermont?

In the case of *Peck* vs. *Mead*, 2 *Wendell* 470, it was held that monies arising from the sale of real property in another state, on an order of a court of probate there, were not assets in the hands of the executor in New-York.

Heydock's Appeal from a Probate Decree.

So in *Hooker* vs. *Olmstead*, 6 *Pick.* 481, it was held that when one who has been appointed administrator in Massachusetts takes out letters of administration in another state, and thereupon collects debts of citizens of such other state, and sells lands there situate, the administration of such assets is not covered by his bond given in Massachusetts.

These authorities would seem to show that in New-York and Massachusetts the executor would not be answerable in his administration account for the proceeds of real estate sold out of the state.

And we think that upon principle as well as authority it must be so here.

It is the duty of an executor to collect the personal estate of the testator, wherever situated, and to bring it home for administration and distribution, according to the law of the testator's domicil.

But in regard to real estate the rule seems to be different. 9 *Mass. R.* 395, *Austin* vs. *Gage.* It is subject to the law of the place where it is situated. On the testator's death it vests in his heirs or devisees, and can only be reached and their title defeated by the law of the place.

The law, then, requiring the personal estate to be collected and distributed according the law of the domicil, does not and cannot apply to real estate. Such estate cannot be sold without the aid of the law of the place, and when sold is subject to the law of the place authorizing the sale.

The judge of probate therefore erred in including the said sum of $7,145 33 in the account here, as the executor is subject, as regards that sum, to the laws of Vermont.

The real estate would be distributed according to the law of the place where situated. We apprehend that if sold, the avails must follow the same rule, and be distributed according to the *lex rei sitæ*.

The executor is not answerable here, because he is answerable to the court in Vermont, whence he derived the power to make the sale.

If an administrator sell real estate for the payment of debts, pursuant to the authority given him under the local laws *rei sitæ*, he is not responsible for the proceeds as assets in any other state; but they are to be disposed of and accounted for solely in the place and manner pointed out by the local law. *Story's Conflict of Laws* 437, 438.

The executor in this state is accountable only to the court here for what the court and the laws can authorize him to do. But the court here cannot authorize him to dispose of real estate in Vermont. Therefore the executor is not accountable here for the proceeds of sales of real estate in Vermont.

A power to sell immovable property given to an executor cannot be executed unless upon due probate of the will in the place where the property is situated, and showing that it may be lawfully done by the *lex loci*. *Story's Conflict of Laws* 419, 420; 2 *Hamm. R.* 124, *Wells* vs. *Cowper*.

By the laws of Vermont, the executor in this case could make no sale of the real estate in Vermont but for the purpose of paying debts and legacies; and the court there could grant no authority to sell beyond what the personal estate might fall short of paying.

It appears in this case that the amount of the claims against the estate, to be provided for by a sale of real estate in Vermont, could not have exceeded $600, and yet real estate was sold there by the executor to an amount exceeding $6000. There must have been some gross error in this case somewhere.

Story, in his *Conflict of Laws*, 422, 423, says: "The 'right of the foreign executor or administrator to take out 'such new administration is usually admitted as a matter of 'course, unless some special reason intervene; and the new 'administration is treated as merely ancillary or auxiliary to 'the original foreign administration, so far as regards the 'collection of the effects, and the proper distribution of them. 'Still, however, the new administration is made subservient

'to the rights of creditors, legatees and distributees res-
'ident within the country ; and the residuum is transmissi-
'ble to the foreign country only when the final account has
'been settled in the proper domestic tribunal, upon the equi-
'table principles adopted in its laws."

In this case, there is not one of the legatees in this state,
nor has there been for years. They were all born in Ver-
mont, and some of them have recently had their domicil
there.

In respect to immovable property, every attempt of a for-
eign tribunal to found a jurisdiction over it must, from the
very nature of the case, be utterly nugatory, and its decree
must be forever incapable of execution, *in rem. Story's
Conflict of Laws*, 463, 467, *and* 361.

But how idle this rule of law would become, if real estate
can be disposed of without the authority of the laws of the
place where it is situated, and be drawn within the juris-
diction of other courts, that could never have reached the
property in question ;—as in this case the probate court here
has no authority over real estate in Vermont. But if, after
a sale there by right or by wrong, the court here can attain
jurisdiction of the proceeds, it obtains indirectly what it
never could claim directly.

*J. Smith* and *Britton*, for the appellees.

The testatrix had her domicil in New-Hampshire. The
estate was in a due course of administration here. The ad-
ministration in Vermont was merely ancillary.

As we understand the law, the property which came into
the hands of the executor could not be distributed among
the heirs and legatees under the administration in Vermont.
That distribution is to be made according to the law of the
domicil of the testatrix. The property should then be ac-
counted for here, in order that it may be disposed of accord-
ing to our law.

This must be so in relation to the proceeds arising from the sale of real estate in Vermont.

The laws of Vermont make provision for the sale of the real estate of persons deceased under certain circumstances, for certain purposes. By virtue of the provisions of those laws the executor sold the real estate in Vermont, and converted it into money, and was charged for it as such in his final account there.

It thus became personal assets, and subject to the law governing such assets, just as if it had accrued from the sale of personal property.

What disposition, then, could be made of this property so found in his hands there, other than to order him to account for it here for the purpose of distribution according to law? None.

The judge of probate did right, then, in charging the executor here with that amount.

The principal question in this case has been directly decided in the long litigated case of *Jennison* vs. *Hapgood*, 10 *Pick.* 77, and *Daws* vs. *Boylston*, 9 *Mass. R.* 339.

RICHARDSON, C. J., delivered the opinion of the court.*

The question to be settled in this case is, whether the appellant, under the circumstances, can be held to account here for the balance found in his hands upon the settlement of his administration account in Vermont?

The settlement of the estates of persons deceased, who have left property in different states and countries, where different institutions, customs, laws and polity prevail, has in times past raised many intricate questions. But the common convenience and comity of commercial states and nations has at length led to the adoption of certain rules of international law on the subject, which seem now to command almost universal confidence, respect and obedience. And we shall in the first place proceed to extract these rules from

* PARKER, J., did not sit.

the various cases in which they have been examined, explained and applied—a task, the labor of which will be much abridged by Mr. Justice Story's excellent treatise upon the conflict of laws, where the cases are all collected.

In general, by the law of every country in the world, where law has the semblance of science, personal property is held to have no locality, but is subject to that law which governs the person of the owner; that is, to the law of the owner's domicil, both with respect to the disposition of it and with respect to the transmission of it, either by succession or by the act of the party. 1 *H. Bl.* 665, *Sill* vs. *Worswick;* 2 *B. & P.* 229, *note;* 4 *Cowen* 517, *note; Story's Conflict of Laws* 313; 4 *Johnson's C. R.* 460, *Holmes* vs. *Remsen;* 1 *Binney* 349, *note;* 4 *D. & E.* 182, *Hunter* vs. *Potts;* 2 *H. Bl.* 402, *Phillips* vs. *Hunter.*

There are exceptions to this rule, founded upon the exercise of that right, which every country has, to regulate the transfer of all personal property within its territory. 5 *N. H. R.* 213, *Saunders* vs. *Williams;* 5 *Peters S. C. R.* 518, *Smith* vs. *The Union Bank of Georgetown; Story's Conflict of Laws* 315—318, 347—351; 6 *Binney* 361, *Moreton* vs. *Milne;* 5 *East* 131; 20 *Johnson* 229, *Remsen* vs. *Holmes;* 6 *Pickering* 286, *Blake* vs. *Williams;* 5 *Green.* 245, *Fox* vs. *Adams;* 13 *Mass. R.* 146, *Ingraham* vs. *Geyer.*

But when there is no rule of law in the country where the property is situated, giving it an implied locality, the general rule is to prevail.

Real estate is exclusively subject to the laws of the government within whose territory it is situated. The capacity to take and to transfer real estate, and the forms and solemnities of passing the title, are to be settled by the law of the place where the property is situated. *Story's Conflict of Laws* 358—370; 2 *Vesey & Beames* 127, *Brodie* vs. *Barry;* 5 *B. & C.* 438, *Doe* vs. *Vardill;* 7 *Cranch* 115, *The United States* vs. *Crosby;* 1 *Pick.* 81, *Cutter* vs. *Davenport.*

A will of personal property, in order to pass it, must be

executed according to the law of the place of the testator's domicil at the time of his death. *Story's Conflict of Laws* 391—395.

The succession to the personal property of one who dies intestate is governed exclusively by the law of his actual domicil at the time of his death. *Story's Conflict of Laws* 403.

As the title of executors and administrators, derived from a grant of administration in the country of the domicil of the deceased cannot *de jure* extend beyond the territory of that country and the property therein; and as whatever title they may have to property of the deceased in other countries is founded upon comity merely, and is subject to be controlled and modified by the laws of such countries, such executors and administrators are not permitted to meddle with the property in such foreign countries, nor can they sue or be sued, until they have obtained letters of administration there. Hence, when the property of a person deceased is situated in different countries, it is necessary to have a principal administration in the country of his domicil, and ancillary administrations in other places. And when the assets have been collected under an ancillary administration, the better opinion seems to be that the court granting such administration may in the exercise of a sound discretion decree distribution, or remit the property to the principal administrator. 1 *Mason* 381, *Harvey* vs. *Richards*.

It seems, therefore, that the claim of the principal administrator to any balance found in the hands of the ancillary administrator, on the adjustment of his final account, must depend on a decree of the court where the latter adjusts his account, ordering such balance to be remitted to the former.

When the principal administration and the ancillary have been committed to the same person, and he has been ordered by the court where the ancillary administration was granted, upon the adjustment of his final account there, to pay the balance found in his hands according to the directions of the

court where the principal administration was granted, no doubt is entertained that he may be charged with that balance in the court granting the principal administration. 10 *Pickering* 77, *Jennison* vs. *Hapgood.*

We shall now proceed to consider how far and in what manner these rules apply in the case before us.

The testatrix had her domicil in this county at the time of her decease. The administration here, then, is to be considered as the principal, and the administration in Vermont as ancillary. And as a balance has been found in the hands of Heydock on the adjustment of his final account in Vermont, and he has been ordered by the court there to pay that balance under the direction of the court here, according to the general rule he is now to be charged with that balance in this case.

But it is insisted, that as the balance found in his hands there was the proceeds of the sale of real estate situated there, the rule does not apply, and he cannot in such a case be charged with the balance here.

It is undoubtedly true, that when an administrator sells real estate pursuant to the authority given him under the laws of the state where it is situated, he is not responsible for the proceeds as assets in any other state, but they are to be accounted for solely in the place and manner pointed out by the laws of the place where the real estate was situated.

But in this case it has been decreed by the highest court in Vermont, that Heydock shall account for the balance in his hands here; and we must presume that this decree is warranted by the laws of Vermont. Indeed, it is not competent for us to go behind that decree, and examine its merits. How and for what purposes he obtained license to sell the real estate are matters with which we have nothing to do. His liability to account for that balance here, is settled conclusively by that decree.

But if we were at liberty to go behind that decree, what should we find? Heydock had sold real estate, and had the

proceeds to a large amount in his hands.    Those proceeds
were not wanted to pay any debt in Vermont.    What was
to be done ?    It is not pretended that he had any claim to
keep the money to his own use.    It was money belonging
to the estate, and to be distributed like any other money belonging
to the estate.    Nor was it at all material whether it
was the proceeds of real or personal estate, under the circumstances.    It was enough that it was money in his hands, for
which he was bound to account ; and as it was not wanted
in Vermont, he was very properly ordered to account for it
here, where the principal administration had been granted.
The decree of the court in Vermont is, then, well sustained
by principle.

In Massachusetts, it has been decided that if an executor
there, having taken out ancillary administration in another
state, has in his hands, after paying the expense of administration
and discharging his liabilities there, a surplus arising
from the proceeds of sales of lands in such state, he is bound
to account for it as personal property in Massachusetts.    10
*Pickering 77, Jennison* vs. *Hapgood.*

This is an authority directly in point in this case.

We are very ready to concede that this appellant could not
be charged here merely by showing that he had in his hands
the avails of a sale of land in Vermont made under authority
given him by the laws of that state.    In such a case we
should presume that the sale had been authorized for particular
purposes, to which the avails ought to be applied.
But when it is shown that after an adjustment of his final
account and discharging all claims against the estate there,
there is a balance of those avails in his hands, for which the
highest court in that state has ordered him to account here,
we have no hesitation in holding him accountable for that
balance in this case, and are of opinion that the decree in the
court below must be affirmed.