## GOODALL *vs.* MARSHALL, Admr.

The law of the place under which an ancillary administration is taken, must govern the distribution of the assets, in the payment of debts there.

But the distribution of the estate among the heirs or legatees, is to be made according to the law of the domicil of the testator, or intestate, at the time of his decease.

Where a person domiciled in another government, dies, leaving personal property in this state, and an ancillary administration is taken out here, and the estate represented insolvent, all the creditors of the deceased are entitled to prove their claims against the estate here, and to have the real as well as the personal estate appropriated in satisfaction of their demands.

Where an estate is represented insolvent, all the creditors may pursue their claims, and have them allowed, in every government where administration is taken ; for the purpose of availing themselves of all the estate of their debtor, until they have obtained payment of their debts.

ASSUMPSIT, founded upon a promissory note, made by Alzo Rich, the defendant's intestate, payable to Jeremiah Jordan, or order, and indorsed.

Rich, the intestate, had his domicil in Vermont, and upon his decease administration was taken upon his estate in that government. Having left property in this state, an ancillary administration was taken here, and the defendant appointed administrator.

Prior to the decease of Rich the plaintiff had commenced an action against him in this state, founded upon this note, which was pending at the time of his decease.

The estate was represented insolvent in Vermont, and also in this state, and the plaintiff presented his claim, for allowance by the commissioners, in both states.

The commissioners in Vermont allowed the claim, and the administrators there excepted to the allowance, and filed their exceptions in writing in the probate court. Whereupon the plaintiff appealed to the county court there, according to the law of that state, and the action there is still pending in that court.

The claim was also allowed by the commissioner in this state ; and the defendant, having objected to the allowance,

the plaintiff prosecuted his claim by entering this action in the common pleas, in pursuance of the statute.

The defendant moved the court to dismiss the action, alleging, and offering to prove, that John Dewey, a citizen of Vermont, was the real owner of the note; and he contended that it could not be presented or prosecuted against the estate except in Vermont; and that if the plaintiff was the owner, the claim having been presented and prosecuted in Vermont it could not be allowed in this state also.

The plaintiff denied that Dewey had any interest in the note, and contended that it was a valid claim against the estate, in this state and also in Vermont; and the questions arising upon the motion were reserved for the consideration of this court.

*Goodall & Woods*, for the plaintiff.

*Cushman*, of Vt., for the defendant, cited 7 *Verm. R.* 170, *Hunt* vs. *Fay, Adr.*

Parker, C. J.   The principal questions presented by this case have not been settled by any direct judicial decision here; and involving, as they oftentimes do, a conflict of laws, they have elicited some differences of opinion elsewhere.

When an individual dies possessed of estate in different governments, it seems to be settled, as a general rule, that his personal property, or moveable estate, is to be distributed among his heirs or legatees according to the law of the place in which he had his domicil at the time of his decease. 2 *Kent's Com.* 344, *Lec.* 37.

But the executor or administrator appointed in that place cannot, by virtue of that appointment, prosecute suits in any other state or foreign government; or claim to be recognized there as a representative of the deceased; nor can he be made answerable, as such, in any state other than that in which he has received letters of administration, or done acts which

Goodall *v*. Marshall.

may subject him to liability as executor *de son tort.* 1 *N. H.
Rep.* 193, *Sabin* vs. *Gilman ;* 2 *N. H. Rep.* 291, *Thomp-
son* vs. *Wilson ;* 1 *Johns. Ch. Rep.* 153, *Morrill* vs. *Dickey,
and cases cited ;* 7 *Johns. Ch. Rep.* 45, *Doolittle* vs. *Lewis ;
Story's Confl. of Laws* 422.

It becomes necessary, therefore, in order to the due collec-
tion and disposition of the personal property which may be
left in any other government than that of the domicil, that
an administration should be granted in pursuance of the laws
of such government ; and this is called an ancillary, or aux-
iliary administration.

That the proper office of such an administration is to col-
lect the debts due the deceased in that jurisdiction, convert
the personal property into money, and upon a settlement of
the administration account, to transmit the balance found in
the hands of the administrator, if so directed, to the place of
the domicil, is generally admitted.

That the administrator has, generally, no power to dispose
of the real property, unless the estate proves insolvent, is also
clear.   Under what circumstances he may obtain a license,
and sell for the payment of debts, must depend upon the
conclusions to be drawn respecting the relation which the
ancillary administration bears to the principal administration,
and respecting the rights of the creditors to demand payment
of an ancillary administrator, or to have their claims allowed
against the estate in his hands.

This is a subject of some practical difficulty.   Whether
the ancillary administration is to be made an instrument for
the payment of the debts, or any part of them ; and if the
latter, of what part, has been a subject of considerable dis-
cussion.

If the general principle, that personal property follows the
law of the place where the owner has his domicil, and is to
be disposed of and distributed according to that law, was to
be applied, without exception, in the administration and set-
tlement of estates, it would seem to be the proper office of

an ancillary administration to convert the property into money, and, after deducting the charges and expenses, to transmit all the residue to the place of the principal or original administration, to be distributed by the courts of that jurisdiction, according to its laws, leaving the creditors, heirs and legatees to pursue their remedy in that forum. The law of the domicil could most readily and correctly be administered in its own tribunals, and the property, when converted into money, could easily be transmitted there.

But it has been thought that this course would impose an unnecessary hardship upon creditors who were citizens of the government where the ancillary administration existed; and it seems to be generally settled that the debts due to such citizens should be paid by the ancillary administrator— the surplus only being transmitted to the place of the principal administration—and that in case of insolvency the assets in his hands are to be distributed among them. *Vide* 2 *Kents Com., Lec.* 37 ; *Story's Confl.* 422 ; 3 *Pick. R.* 145, *Dawes* vs. *Head.*

Some opinions exclude all other creditors from having their debts allowed and paid in the place of the ancillary administration. 7 *Verm. R.* 183, *Hunt* vs. *Fay*—Mr. Justice Mattocks *dissenting.* The point of the decision in that case, however, was, that the claim of the creditor was barred by a neglect to present it in this state, under the principal administration ; which also was not the unanimous opinion of the court. *And see* 8 *Pick.* 475, *Davis* vs. *Estey.*

It is apparent, that so far as creditors are permitted to prosecute their claims against the ancillary administrator, or the property in his hands, an exception must be made to the application of the law of the domicil of the late owner. If the debts are provided for in the place of the ancillary administration, the mode of payment under that administration must be regulated by the *lex loci rei sitæ.* In the case of immoveable property, the claimant, or heir, whether he derives his title through an intestacy, or as devisee under a will, can

take only according to that law. *Story's Confl.* 419. And in the case of insolvency, the creditors can reach the real property for the satisfaction of their debts, only through the instrumentality of the same law.

With respect to moveable property, as the title to it is subject to be modified, controlled and limited by every nation, as it may think proper, with reference to its own institutions, and its own policy, and the rights of its own subjects; and as no nation is under any obligation of comity to enforce foreign laws prejudicial to its own rights, or those of its own subjects, (*Story's Confl.* 421) it follows, that so far as an administration is had of the property in any particular government, it must be according to the *lex loci*. This is uniformly, and it may be said necessarily, so in the granting of the administration, the collection of the debts due the estate, the conversion of the property into money, and the settlement of the account of administration. No nation or state is believed, in these particulars, to act with reference to the foreign law of the domicil of the deceased. Thus far the proceedings are analogous to laws regulating the remedy; or it may, perhaps, with more propriety be said that those proceedings, so far as they look to the payment of debts, are proceedings to enforce the remedy.

And the same law must govern the distribution of the assets, in the payment of debts. If there be any conflict in the laws of the two places, the government which provides for and sustains the ancillary administration, if it retains the assets for distribution among those of its own citizens who are creditors of the estate, will of course provide for their payment according to its own laws. There can be no reason, thus far, for the intervention, or administration, of any foreign law. Had those creditors pursued the property within their own government, in the life-time of their debtor, it must have been according to the law of that government, excluding any preferences, or rules for distribution, prescribed by the *lex domicilii;* and the same application of the law may well continue after the decease.

Goodall *v.* Marshall.

Nor do we see any reason why a different rule of payment or distribution should be adopted, if the creditors of other states or nations are permitted to come with their claims, and to seek satisfaction out of the funds in the hands of the ancillary administrator. If the law of the domicil recognized and provided for preferences of one class of creditors over another; as, for instance, if by that law the creditors by specialty were first to be paid, while the *lex loci* required the payment of all creditors equally; the courts of the place of the ancillary administration could not be required, upon any principle of comity, to administer the foreign law, and to provide for such preferences, to the prejudice of their own citizens, claiming under their own laws. Nor could they be asked to administer the foreign law among their own citizens, by giving a preference of payment to those of them who were creditors by specialty. This conclusion seems to be sustained by the general current of authorities in this country. *Story's Confl.* 439, *and cases cited.*

The ancillary administration, therefore, operating only upon the property within that jurisdiction, is, throughout its whole proceedings, so far as creditors are concerned, to be governed by the law of the place. The property which is subjected to it, notwithstanding it is moveable, no longer follows the law of the late domicil of its former possessor, except in regard to the balance which may be in the hands of the ancillary administrator, after the payment of the debts; and this will be subjected to the law of that domicil, either by being transmitted to the place of the domicil; or, if special circumstances require it, by a decree of distribution, according to that law, in the forum of the ancillary administration. It seems to be settled that this latter course is within the discretion of the court. 1 *Mason's R.* 408, *Harvey* vs. *Richards; 2 Kent's Com., Lec.* 37; 11 *Mass. R.* 256, *Stevens* vs. *Gaylord; 3 Pick. R.* 144, *Dawes* vs. *Head; 6 Verm. R.* 374, *Heirs of Porter* vs. *Heydock; 7 N. H. Rep.* 503, *Heydock's Appeal. See, also, 8 Mass. R.* 506 : 9 *Mass. R.* 337.

Goodall *v.* Marshall.

This shows, very conclusively, that the position assume d in *Dawes* vs. *Head*, 3 *Pick.* 141, that the ancillary adminis-trator "is only the deputy, or agent, of the executor abroad," must be received with very great qualification at least. He receives his authority, not from the executor, but under a different law. He administers the estate which comes to his hands, up to the final settlement, under a different, and perhaps conflicting, law from that under which the executor acts ; and he is in no way subject to the orders of the exe-cutor in the performance of his duties. He may, it is true, be answerable to him through the operation of the adminis-tration bond, for the balance ; and perhaps for mal-adminis-tration ; and there may be a privity between them to a cer-tain extent, but the consideration of that is not important at the present time.

As the moveable property must be administered according to the *lex loci rei sitæ,* until it comes to the disposition of the balance in the hands of the administrator, is there any sound reason why a distinction should be made between creditors, citizens of that place, and those who reside in other govern-ments ? Or, in other words, shall the government which ad-ministers the property within its jurisdiction, and causes that administration to enure for the benefit of its own citi-zens, exclude the citizens of other states from a participa-tion in it, by refusing to entertain their claims ?

The first answer to this question may be drawn from a consideration of the state of the law relating to the remedies of the creditors, preceding the death of their debtor. It would perhaps be too much to say, that there is no nation, possessing just claims to be regarded as a civilized govern-ment, in which, during a time of peace and friendly rela-tions, the subjects or citizens of a foreign state are excluded from pursuing similar remedies for the collection of debts to those provided for its own subjects. It is sufficient that no such exclusion is known to the common law, nor to the statutes of England or those of the several United

States. So far as regards the relations of the latter to each other, any attempt at such exclusion is prohibited by the clause of the constitution of the United States which provides that the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states. If the creditors of the domicil may pursue the property of the debtor in his life-time, in another government, equally with the citizens of the government where the property is situated, no sound reason suggests itself why they should be debarred of a remedy, and the property be appropriated exclusively, or in the first place, to the satisfaction of the creditors in the latter government, on his decease. Even if by permitting them to come in, the property may be insufficient to pay all, and the creditors in the government where the property is situated be thereby compelled to resort to the principal administration, where the debtor had his domicil, or to lose their debts, or a portion of them ; this result is no other than might have been attained in the life-time of the debtor, by his withdrawal of the property from their jurisdiction.

Another answer, and one which seems entitled to weight, is furnished by the considerations to which we have before adverted, showing that the ancillary administration, so far as creditors are concerned, is to be governed by the *lex loci.* If no regard is had to the place of residence of the deceased, in the marshalling of the assets, and the payment of the debts, no good reason occurs to us why any regard should be had to the place of residence of the creditors, in the allowance of the claims.

And besides, it is not quite clear, in cases of actual insolvency, where there is sufficient personal property in the hands of the ancillary administrator to pay the debts due there, that the other creditors can reach the real estate, if any, in that place, except by presenting their claims there, and having them allowed, in due course, on a representation of insolvency. By the law of this state, lands are charged

with the payment of debts, and an execution issuing against the goods and estate of a person deceased, in the hands of his executor or administrator, may be extended upon lands which were of the deceased. 2 *N. H. Rep.* 341, *Mead* vs. *Harvey.* And the administrator may sell the lands, under a license, for the payment of debts, if they are necessary for that purpose, whether the estate be solvent, or insolvent. *N. H. Laws* 365. But if there is sufficient personal estate here to pay all the demands against the estate which may be prosecuted or allowed here, it may admit of question whether license can be granted, on a representation that the estate is insolvent under the administration of the place of the domicil. If the ancillary administrator has sold real estate, he may be required to pay over any balance of the proceeds remaining in his hands to the principal administrator, or to account for such balance himself, in the settlement of his accounts in the place of the domicil, if he happen to be administrator there also. 6 *Vermont R.* 374 ; 7 *N. H. Rep.* 496 ; 10 *Pick. R.* 78, *Jennison* vs. *Hapgood ;* 8 *N. H. Rep.* 494, *Judge of Probate* vs. *Heydock.*

And furthermore, the creditors, where the ancillary administration exists, are not bound to present or prove their claims in that place, but may rely upon their remedy in the place of the domicil alone, if they so elect.

For these reasons we are of opinion that where a person, domiciled in another government, dies, leaving property in this state, and an ancillary administration is taken here, and the estate represented insolvent, all the creditors of the deceased are entitled to prove their claims against the estate here, and to have it appropriated in satisfaction of their demands.

We are aware that the result, thus attained, will not place the rights of the creditors, in a state where an ancillary administration exists, precisely on the same footing on which they might have stood, with reference to the other creditors, had their debtor in his lifetime been declared a bankrupt, in

the place of his domicil. In that case the established law of the United States seems to be, that the creditors of the place, other than that of the domicil, may resort to the property there, without regard to proceedings in bankruptcy; and that they may appropriate it, or so much of it as is necessary, to the payment of their debts. *5 N. H. Rep.* 213, *Saunders* vs. *Williams, and cases cited.*

The propriety of this American rule, as it has been called, authorizing the foreign creditors, in the case of bankruptcy, to appropriate the property to the payment of their debts, according to the *lex loci*, instead of sending it to the place of the domicil, to be there distributed under the proceedings in bankruptcy, has been strongly impugned by Mr. Chancellor Kent, and Mr. Justice Story, although they admit it to be the settled rule and policy here. If their views are correct, and if the disposition of the moveable property, situate in a foreign government, on the decease of the owner, ought to be founded on similar principles, then the result would seem to be that no debts should be paid through the agency of the ancillary administration; but that all the proceeds, after deducting the expenses of the administration itself, should be transmitted to the place of the principal administration, and all the creditors be compelled to resort thither for their satisfaction. But a universal consent to this, as the rule, is not to be expected; the authorities having already settled, that the creditors, where the property exists, shall not be compelled to resort to the place of the principal administration.

It is true that the rule just adverted to, allowing the creditors of the place where the property is situated to appropriate it, so far as is necessary, to the payment of their debts, in cases of bankruptcy, might be applied, through the agency of an ancillary administration, to the satisfaction of the same class of creditors, and to the exclusion of others, after the decease of their debtor. But although it is very desira-

Goodall *v.* Marshall.

ble that rules regulating the rights of creditors should be simple and uniform, so far as may be, and that analogous cases should be governed by rules having as great an analogy to each other as the cases they govern have to one another ; still we think there are sound reasons why this rule, which thus prevails in bankruptcy, should not be applied to the settlement of estates, even if the estates be in fact insolvent. In the first place the rule itself, which, in bankruptcy, permits the creditors in a foreign government to seize upon the property there, (although it has much of policy to justify it, in the protection it gives to the citizens of the government in which the property is found, and from which it must be carried in order to be distributed under the bankruptcy,) would not commend itself to an enlightened jurisprudence, which could protect and provide for the interests of all the creditors. There are several reasons why this rule may be justified, as one of policy, in the existing state of things.   The property so situated would have been liable to the satisfaction of creditors there, through the agency of their own tribunals, in the lifetime of their debtor——the tribunals of the country where it is situated  cannot administer the law under which the debtor is declared bankrupt, or insolvent ; nor is provision usually, if ever, made for auxiliary proceedings in insolvency——the creditors, in the government of the domicil, may well be bound by the law which their own legislature, or lawgiver, has provided for them ; and not be permitted to resort to foreign tribunals, to obtain preferences in cases where their own laws have declared that the proceedings of their debtor ought to be arrested, and his property divided among his creditors.   It is only by these, and other reasons of a similar character, that the rule in cases of bankruptcy can be made entirely satisfactory, if even these can make it so.

But some of these reasons have little, if any application, in cases where the debtor is dead, and where the laws of the

several states, in which his property is situated, provide for the collection of the assets by an administration, and also for the payment of the debts. Especially, it cannot be said, in such cases, that the creditors of the place of the domicil ought to be bound to the action of their own tribunals, and not permitted to go abroad and avail themselves of another administration, for the purpose of obtaining satisfaction.

The next question is, whether the fact that the plaintiff has presented his claim in Vermont, and that proceedings are now pending there for its allowance against the estate, under the principal administration, can avail to defeat the claim here.

The mere pendency of a suit in that state would have been no bar to an action brought here, against the intestate, in his lifetime. 9 *Johns. R.* 221, *Brown* vs. *Joy ;* 5 *N. H. Rep.* 325, *Weeks* vs. *Pearson.* And there is as little reason why the mere pendency of proceedings against his estate, in another state, should form a bar to the allowance of his claim against the estate in this jurisdiction.

But we do not place our decision upon this ground alone. The considerations already suggested indicate our opinion, that where an estate is represented insolvent, all the creditors may pursue their claims, and have them allowed, in every government where administration is taken ; for the purpose of availing themselves of all the estate of their debtor, until they have obtained payment of their debts.

In the view we have thus taken of the matter, it is wholly immaterial whether the plaintiff is the absolute owner of the demand, or whether he holds it in trust for Dewey, as alleged by the administrator.

A final adjudication upon the mode and manner of distributing the assets, where there is more than one administration, and an actual insolvency, is not necessarily involved in this case, except that it follows as a consequence from the principles stated, that there is to be a distribution among the creditors who prove their claims, under the ancillary admin-

istration.    That the court there cannot distribute directly to
any creditors except those who present their claims, in due
course, for settlement, is very clear.    Whether, in making
this distribution, regard is to be had to any other claims,
seems not to be fully settled.    In *Dawes* vs. *Head,* before
referred to, an opinion is expressed that the proper course is
to make a *pro rata* distribution among the creditors, citizens
of that state, having regard to all the assets in the hands of
the principal, as well as in those of the ancillary administra-
tor ; and having regard also to the whole debts, which by
the laws of either country are payable out of those assets,
" disregarding any fanciful preferences which may be given
to one species of debt over another," &c.    It is further said,
" the administrator here should be held to show the condi-
tion of the estate abroad, the amount of property subject to
debts, and the amount of debts, and a distribution could be
made upon perfectly fair and equitable principles."    In *Da-
vis* vs. *Estey,* 8 *Pick. R.* 475, the principle was directed to
be applied, in the satisfaction of a judgment rendered.

Cases may exist in which this will prove a perfectly satis-
factory rule, and accomplish an equal distribution, among all
legally entitled.    But in other cases there may be great diffi-
culty in its application.    It holds the ancillary administrator
to furnish evidence which he may have no means of pro-
curing, for he has no control over the principal administrator.
It may not accomplish the equality which is the great object
to be attained by it ; for if the estate in the hands of the
principal administrator is greater in proportion to the claims
there to be paid, than that in the hands of the ancillary ad-
ministrator in proportion to the claims allowed under that
administration, no decree can be made under the latter which
will give the creditors there a *pro rata* distribution, unless
their claims have been allowed under the principal adminis-
tration also.    It is only when the funds collected under the
ancillary administration will give the creditors in that gov-
ernment as great a share as the others, that the equality

Goodall *v.* Marshall.

sought is to be attained by that process. Another objection is, that if, by the laws of other governments, there are "fanciful preferences" existing there, the rule cannot be made reciprocal in its operation; for in a case in which the ancillary administration exists there, and the principal one in a state where by the laws there is to be an equal distribution, the courts in which the ancillary administration proceeds must give effect to the preferences there allowed, whether they are regarded as fanciful or otherwise; and in that case the surplus of the assets, over and above the rateable share of the creditors there, will not be transmitted to the place of the principal administration, that the creditors there may have an equal share. Besides, if there is any thing here which should be distributed with reference to the laws of another government, or with reference to the property which is to be disposed of by the operation of those laws, we can hardly regard the preferences they give as fanciful, or disregard the laws themselves, while we take into account the property on which they are to act.

It will deserve further consideration, when a case arises which shall require it, whether it is not the better rule to distribute the assets, under the ancillary administration, among all those who have entitled themselves to payment, or a dividend, there, without reference to the amount of the estate, or claims elsewhere. So long as it is open for all to present and prove their claims, this rule will provide for as equal a distribution as the laws permit. If creditors fail of obtaining a full share, through their own laches, they will have no cause of complaint.

It may be, that upon the final distribution in the place of the domicil, among the creditors who have pursued their claims there, such regard should be had to the dividends, or payments, which have been received in the place of the ancillary administration, as to distribute the assets, as far as possible, among those entitled according to the law of the domicil. Regard is, of course, to be had to such payments

far enough to provide that no creditor shall receive more than his whole demand, by means of having had it allowed in different jurisdictions. But we may well dismiss the further discussion of this matter at the present time.

*Motion denied.*