HARRY F. R. DOLAN *vs.* MARY B. ANTHONY *et al.*
SAME *vs.* JANE L. ANTHONY *et al.*
JOSEPH S. O'NEILL, *Ex. vs.* MARY B. ANTHONY *et al.*
SAME *vs.* JANE L. ANTHONY *et al.*

JANUARY 16, 1931.

PRESENT: Stearns, C. J., Rathbun, Sweeney, and Murdock, JJ.

MURDOCK, J. These are four appeals from two decrees of the Probate Court of the City of Providence. After a hearing in the Superior Court the appeals were denied and dismissed and the decrees of the Probate Court affirmed. The appeals are before us on appellants' exceptions.

The appellant O'Neill is executor of the will of Lorania C. Beckwith, who had her domicile in Norfolk County in the Commonwealth of Massachusetts where her will was admitted to probate. A copy of the same was recorded in the Probate Court of the City of Providence and ancillary letters of administration were granted to said O'Neill as executor of the estate of said Lorania C. Beckwith in Rhode Island. The appellant Dolan has acted as counsel for the executor in the administration of the estate. The appellees are the residuary legatees and devisees under said will.

At a hearing in the Probate Court of the City of Providence the final account of the executor of the estate in Rhode Island was allowed and the executor was charged with a final balance of $10,700.86. After this decree, from

which no appeal was taken, had been entered O'Neill filed a petition for a decree that said balance in his hands as executor in Rhode Island be transmitted to him as executor in Massachusetts to be applied there in payment of expenses of administration and the appellees filed a petition for a decree that said balance be distributed to them. A decree was entered denying the petition of O'Neill and another decree entered granting the petition of the appellees for distribution among them of the balance in the hands of the executor. From these two decrees the appeals were taken which are now before this court upon said exceptions.

The Probate Court acted by virtue of authority of Sections 40 and 41, Chapter 363, General Laws, 1923, which are as follows: Estates of Non-Residents. "Sec. 40. When a will is filed and recorded or administration is granted in this state on the estate of a person who was an inhabitant of any other state, territory, or district of the United States, or of a foreign country, his estate, real and personal, found here shall, after payment of his debts, be disposed of according to his will, if he left any executed according to law; otherwise the real estate shall descend according to the laws of this state, and his personal estate shall be distributed and disposed of according to the laws of the state, territory, district, or country of which he was an inhabitant.

"Sec. 41. Upon the settlement of such estate, and after the payment of all debts for which the same is liable in this state, the residue of the personal estate may be distributed and disposed of in manner aforesaid by the probate court; or, in the discretion of the court, it may be transmitted to the executor or administrator, if any, in the state, territory, district, or country where the deceased had his domicile."

The principal questions raised by the appeals are, first, as to whether the Probate Court of the City of Providence abused the discretion vested in it by statute in denying the petition of O'Neill and granting the petition of the appellees for distribution, and second, did said court by its decree fail to give full faith and credit to a decree entered by the

Probate Court of Norfolk County, Massachusetts, directing said O'Neill as executor of the will of Lorania C. Beckwith to pay Harry F. R. Dolan $13,000 on account of services rendered to her estate.

Since the leading case of *Harvey* v. *Richards*, 1 Mason, 381, decided in 1818 by Justice STORY, the law is well settled that an ancillary administration is not servient to that of the domicile, that one has no priority over the other and that it lies in the discretion of the court having jurisdiction over the property to distribute the same in accordance with the domiciliary law or to transmit the assets to the jurisdiction of the domiciliary court. The only limitations upon this discretion are those imposed by the principles of comity and equity. *Cassilly* v. *Meyer*, 4 Md. 1; *Moses* v. *Hart*, 25 Gratt. 795; *Graveley* v. *Graveley*, 25 S. C. 1; *Welsh* v. *Adams*, 152 Mass. 74; *In re Welles' Estate*, 161 Pa. 218; *In re Lane's Estate*, 199 Iowa, 520; *In re Eaton's Estate*, 178 N. Y. Sup. 825; *In re Fult's Estate*, (Minn.) 225 N. W. 152; *Bishop* v. *Ross*, (Ind.) 103 N. E. 505; 24 C. J. 1126. The determination of the question as to whether there has been an abuse of discretion depends upon the circumstances of each particular case. In the instant case it appears that the testatrix in her lifetime was the beneficiary of three trust estates of which the Rhode Island Hospital Trust Co. is trustee. The principal of these estates aggregated about $700,000. In over half of this amount the testatrix had only a life estate and in the balance represented by the other two trust estates she had in addition to a life estate a power of appointment which she exercised in her will directing that the trust property be divided in certain proportions among the persons who are the appellees in the case now before us.

The testatrix died in California shortly after giving birth to a child born out of wedlock. Her estate at her domicile inventoried at about $7,500 and her estate in Rhode Island at about $18,000. There was no contest over the will and no unusual difficulties in the administration of the estate in

Massachusetts.   A guardian *ad litem* was appointed to look after the interests of the child and the sale of a farm which the testatrix owned there was authorized and completed. As to the inheritance and estate taxes, the only question which arose related to the trust estates over which the testatrix had the power of appointment and the only duty of the executor with respect thereto was to list them in his return to the proper authorities.   The decedent's debts in Massachusetts, amounting to about $1,500, were not paid by the executor but as these have been satisfied by the appellees no question as to them is before us.   In this State the executor before filing his final account had a balance in his hands of about $10,000 and without an order from the Probate Court of the City of Providence he paid this balance, together with the balance in his hands as executor in Massachusetts, to himself and his attorney, the appellant Dolan. Under an order from the Probate Court of the City of Providence the money taken from this jurisdiction was subsequently returned.   Having thus exhausted all the assets of the estate a demand was made on the Rhode Island Hospital Trust Co. that the principal of the two trust estates over which the testatrix had the power of appointment be turned over to the executor to be administered by him.   Upon refusal by the said trustee to comply with this demand the executor filed two suits in equity in the United States District Court for the District of Rhode Island to compel compliance.   This action appears to have been taken by the executor on his own initiative and without the consent of the appellees.   Before said suits were filed the Rhode Island Hospital Trust Co., after the demand for the funds had been made, brought a bill of equity in this court asking for instructions as to the disposition of the funds in these two trusts.   In *Rhode Island Hospital Trust Co.* v. *Anthony,* 49 R. I. 339, this court rejected the claim of the executor to said funds and directed the trustee to continue to administer the trusts and to pay therefrom all inheritance or other taxes properly chargeable against these funds.

Prior to the entry of the decrees now before us the appellant Dolan filed a petition in the Probate Court for Norfolk County, Massachusetts, reciting that he had acted as attorney for the executor in Massachusetts and praying said court to order the executor to pay him $13,000. Such order was entered and execution against O'Neill was issued which remains unsatisfied. The probate courts in Massachusetts are by statute made courts of superior and general jurisdiction with reference to all cases and matters in which they have jurisdiction. General Laws, Mass., Chapter 215. This judgment or order against O'Neill has the same force and effect as a judgment in our Superior Court against an executor would have. The appellants' contention that there has been an abuse of discretion by the disallowance of the petition for transmission of the funds is based on the erroneous argument that expenses of administration stand on the same ground as debts of the decedent. Assuming that the assets at the domicile were not depleted by extravagant allowances for expenses of administration we would have no hesitancy in declaring it an abuse of discretion not to provide for the payment of the acknowledged debts of the decedent in Massachusetts before ordering distribution to the legatees. Charges of administration are not debts of the decedent and the court of ancillary jurisdiction may properly inquire into the justness of such charges when asked to transmit funds for their payment. The judgment against O'Neill is for services rendered to him as executor in Massachusetts. As already noted the total estate in Massachusetts was about $7,500. The appellant Dolan has been paid $2,000. As there was no contest to the will and no services of counsel beyond those usual in a small estate were required, this amount would appear to be ample compensation for all services which could have been legitimately rendered. It is highly improbable that counsel fees amounting to $15,000 in an estate totaling $7,500, would have been allowed by any court if the allowance of such fees had been contested by the executor. The executor

and his counsel are members of the same law firm and the testimony of the former in the Superior Court shows that he approved the amount of the fee allowed by the Probate Court of Norfolk County. An examination of the record discloses that the items which would tend to support Mr. Dolan's claim for a large fee were rendered to the executor of the estate in Rhode Island and consequently should have been presented for allowance in the Probate Court of the City of Providence. From the record before us it is obvious that both the executor and his counsel base their expectation of a large fee on what they assert was a large estate when in fact they were called upon to administer only a comparatively small estate. As to the trust fund left by William Beckwith, even the most cursory examination of his will shows that the testatrix had only a life estate therein and that the ultimate disposition of this trust fund was no concern of the executor. The efforts of the appellants to obtain possession of the remaining trust funds were not in the interest of the appellees but were detrimental to them. It was not the duty of the executor to attempt to get possession of these funds for the purpose of paying estate and inheritance taxes. These taxes, as pointed out in *R. I. H. Trust Co.* v. *Anthony, supra,* should be paid by the trustee. As the estate was large enough to pay all indebtedness of the decedent plus all reasonable charges of administration on an estate of this size, the only reasonable inference that can be drawn from the attempts of the executor to get possession of these funds is that it was done to swell the fees of himself and counsel. Under these circumstances it was not an abuse of discretion to refuse to transmit the funds to the court of the domicile.

The appellants rely upon *Pendleton* v. *Hare,* (Texas) 231 S. W. 334 and *In re Green's Estate,* 226 N. Y. Sup. 436. In both these cases the court found as a fact that services beneficial to the distributees had been rendered to the domiciliary administrator but in neither case were the funds ordered transmitted. The claimants were given the right

to present their claims to the court of ancillary administration.

The point most strongly pressed by the appellants is that the appellees are estopped to contest the validity of the claim for counsel fees because they were represented by counsel at the hearing in the Probate Court of Norfolk County on the petition of the appellant Dolan for an order directing the executor to pay him $13,000. It is not clear in what capacity counsel for appellees appeared. The matter before the court was a suit between Dolan and the executor. The estate was not involved until the order or judgment was presented for allowance in the account of the executor and, in the matter of the allowance of the account, counsel for the appellees did not participate. The appearance of counsel in a matter in which the estate was not directly involved furnishes no ground for the application of the doctrine of estoppel. The order or judgment of the Probate Court of Norfolk County was not presented for allowance in the Probate Court of the City of Providence but was offered only, as stated by counsel, as evidence of the fact that such an order or judgment had been entered in Massachusetts. No question as to the full faith and credit clause of the Constitution of the United States therefore arises.

As the reasons of appeal from the decrees of the Probate Court are the same for each appellant, it is unnecessary to consider the exception of the appellant Dolan to the decision of the Superior Court dismissing his appeal on the ground that he was not a party aggrieved by the decree of the Probate Court of the City of Providence within the meaning of the statute.

The exceptions in each case are overruled and each case is remitted to the Superior Court for further proceedings following the decision.

*Huddy & Moulton, James H. Morson*, of Massachusetts Bar, for appellants.

*Gardner, Moss & Haslam, Charles R. Haslam, Thomas F. Black, Jr.*, for appellees.

ERNEST E. DUPRE *et als. vs.* PAUL ST. JACQUES *et als.*

JANUARY 13, 1931.

## RESCRIPT.

This is a petition in equity in the nature of *quo warranto* to determine the title of the petitioner, Ernest E. Dupre, and the respondent, Paul St. Jacques, to the office of alderman of the Fifth Ward in the City of Woonsocket and of the petitioners, Valmore A. Belanger and Emile A. Pepin, and of the respondents, Alfred Farley and Joseph G. Picard, as members of the common council from said Fifth Ward.

After a full hearing and due consideration of the questions raised by the petition, the court finds that neither the respondents nor the petitioners are entitled to said offices as a result of the election held in said ward on the fourth day of November, 1930.

The reasons for this finding are that the nomination paper filed in behalf of said St. Jacques, Farley and Picard was not properly signed by the required number of voters qualified to sign such nomination paper, and that said Dupre, Belanger and Pepin did not obtain a plurality of the votes cast at said election held in said ward on the fourth day of November, 1930. These reasons will be amplified in an opinion to be filed later.

There must be a new election in said fifth ward for said offices of alderman and two councilmen and the same is hereby ordered to be held in said ward on the 27th day of January, 1931, in accordance with law.

The names of candidates for alderman and two councilmen to be printed on the official ballot shall be the same as were printed on the ballot at the election held on the 4th day of November, 1930, with the exception of the names of the candidates attempted to be placed in nomination by the nomination-paper, which has been declared invalid, and the name of Norbert A. Pinault whose election as councilman is not questioned.

Voters desiring to vote for any persons not on said ballot may write the names of such persons on the ballot as authorized by Section 42, Chapter 11, General Laws, 1923.

ERNEST E. DUPRE *et als. vs.* PAUL ST. JACQUES *et als.*

JANUARY 23, 1931.

PRESENT: Stearns, C. J., Rathbun, Sweeney, and Murdock, JJ.

SWEENEY, J. The finding that neither the respondents nor the petitioners are entitled to the offices of alderman and common councilmen from the Fifth Ward in the City of Woonsocket as a result of the election held in said ward November 4, 1930, as stated in our rescript filed January 13, 1931, is based upon the law and facts as follows.

The right to vote at a caucus or nominate candidates for a civil office is not a contract right guaranteed by the constitution, but rather a private privilege granted by the legislature under its general power to regulate elections. *Opinion to the Governor*, 43 R. I. 421, 424, 9 R. C. L. 1064, 1078.

The General Assembly, acting within its powers, enacted Chapter 11, G. L. 1923, entitled "Of Elections by Secret Ballot." This chapter provides for the nomination and election of candidates for certain civil offices. The nomination and election of aldermen and councilmen in the city of Woonsocket are subject to the provisions of this chapter.

It is undisputed that the petitioners, Ernest E. Dupre, Valmore A. Belanger and Emile A. Pepin were duly nominated as candidates for the offices of alderman and councilmen from said ward by the Republican and the Democratic caucuses to be voted for at the election to be held November 4, 1930, and that the certificates of their nominations were duly made and filed with the board of canvassers and registration of said city, and that their names were lawfully printed upon the official ballot.

Section 13 of said chapter authorizes the nomination of candidates for said offices by nomination-papers. It provides that such nomination-papers shall be signed in the aggregate for each candidate by not less than 50 voters qualified to vote for each such candidate. Each voter is required to add to his signature his place of residence, Sec. 14.

A nomination-paper was filed with said board of canvassers and registration nominating respondents St. Jacques, Farley and Picard for said offices of alderman and councilmen. This paper was filed after three o'clock, October 20, the last day upon which nomination-papers could be filed within the time fixed by Sec. 17 of said chapter. The clerk of the board and his assistant then examined the signatures on the nomination-paper and the clerk told the gentleman who filed the paper that of the 68 signatures on the paper he thought 56 were names of voters qualified to sign such nomination-paper. Saturday afternoon, November 1, the board examined the signatures on the nomination-paper and found that 52 were names of voters qualified to sign such nomination-paper. The board caused the names of these candidates to be printed on the official ballot. At the election held November 4, these petitioners, Dupre, Belanger and Pepin, the candidates of the Republican and the Democratic caucuses, received 1469, 1554, 1608 votes respectively, and respondents, St. Jacques, Farley and Picard, nomination-paper candidates, received 1,843, 1,619, 1,631 votes respectively and were declared elected by said board. The respondents took their oath of office January 4, 1931. Thereafter, on the same day, petitioners filed their petition to test respondents' titles to said offices.

Petitioners alleged that respondents cannot hold said offices because they were not duly nominated therefor as only 37 qualified voters signed their nomination-paper. Respondents claimed that 52 qualified voters signed their nomination-paper and that they were lawfully nominated. At the trial it was admitted that 10 of the 68 signers of the nomination-paper were disqualified. Petitioners claimed that 19 of the remaining 58 signers were disqualified. Testimony was produced to support the claims of the petitioners and respondents relative to each of these names. Ten of these signers were proved to be disqualified. It was proved that four of these signers, Claudia Martin, Victoria Langlois, Arthur Destrampes and Cesira Bonollo were not

eligible to sign the nomination-paper because they had voted at a Democratic or Republican caucus within 26 months, Sec. 6, Chap. 1515, P. L. 1930. One of the signers, Tomba, was not on the voting list; another, Pellerin, lived in the Fourth Ward; another, Jean, had moved out of the State and three others, P. Lee Bridges, Mrs. C. V. Fonteyne and Eva Rondeau, had not signed their names as they appeared on the voting lists. The names as they appeared on the voting lists are "Plato Lee Bridges," "Clemence V. Fonteyne," and "M. Eva Rondeau." It is necessary to hold these last three names invalid because this court held in the case of *Attorney General* v. *Clarke*, 26 R. I. 470, that the voter's name as it appears on the voting list "is the standard by which the signatures to nomination papers are to be tested. This obviously excludes abbreviations and initials, unless they appear on the voting list." This decision was followed in *Stone* v. *Waterman*, 70 Atl. 1009.

The law provides that a person desiring to vote may register his name in the registry book, Sec. 15, Chap. 7, G. L. 1923, and that the board of canvassers shall make out correct alphabetical lists of all persons qualified to vote and the residence of each person thereon by street and number, so far as the same can be ascertained and described from the registry book and from such other evidence as the board may require in the case of any name on such list. Sec. 2, Chap. 8, G. L. 1923. No person can vote unless his name is upon the list of voters and the voter is required to announce his name before he can vote. Secs. 3, 5, 6, Chap. 10, G. L. 1923; Sec. 41, Chap. 11, G. L. 1923. This law is mandatory. *Bryer* v. *Sevigney*, 42 R. I. 187.

It is generally known that it is necessary for voters signing nomination-papers to sign their names as they appear on the voting list. This was known to one of the gentlemen who asked voters to sign the nomination-paper for respondents. Noel Blais testified that he asked Helena Boisseau to sign the nomination-paper and after she had written her name Helen, he asked her to add the letter

"a" so as to make it "Helena" in order to have it conform to her name on the voting list. If a person writes his name in the registry book, and it appears on the voting list the same as it is written in the registry book, it is not unreasonable to require him to write it the same when he signs as a voter on a nomination-paper.

The express statutory provision that the nomination-paper under consideration shall be signed by not less than 50 voters qualified to vote for such candidates is mandatory and cannot be ignored or nullified by any action by the board of canvassers. Unless the nomination-paper is duly signed by the required number of voters the candidates named on the nomination-paper are not duly nominated and their names cannot be printed upon the official ballot, for Section 23, Chapter 11, General Laws, 1923, says: "Every ballot . . . shall contain the names of all candidates whose nominations for any offices specified in the ballot have been duly made . . . and shall contain no other names . . . ." If the board of canvassers and registration had performed their duty by refusing to place the names of the respondents on the official ballot because their nomination-paper was not signed by the required number of qualified voters, such action would be sustained by this court. *Atty. Gen.* v. *Clarke, supra; Stone* v. *Waterman, supra; Como* v. *Sprague, Secretary of State*, 46 R. I. 235.

Respondents contend that petitioners cannot raise the question of the invalidity of the nomination-paper after the election and cite the case of *Sisson, Atty. Gen. et als.* v. *Lisle et als.*, 48 R. I. 281, in support of their contention. In that case it appeared that neither the relators nor the respondents filed their certificate of nominations as required by statute. The town clerk, disregarding the irregularities in both certificates, caused the names of all candidates on both certificates to be printed upon the official ballot. Neither party objected to the placing of the names of all candidates upon the ballot until the day after the election. The town clerk acted fairly and in good faith in placing the

names of all candidates upon the official ballot. It was presumed that he caused to be conspicuously posted in each voting district, at least four days previous to the date of the election, specimen ballots containing the names of all the candidates to be voted for at the election. It was held that the relators had ample opportunity to ascertain that the names of the respondents would be on the official ballot and to object thereto before the election, and consequently were not permitted to complain of the failure of the respondents to file their certificate of nomination as required by law.

In the present case petitioners were deprived of the opportunity of inspecting the nomination-paper or knowing whether the board of canvassers and registration would place the names of respondents upon the official ballot until it was too late to prevent the printing of their names on the official ballot.

Petitioners had the absolute right to inspect the nomination-paper after it was filed for the statute provides that all nomination-papers, when filed, shall be open, under proper regulations, to public inspection, Sec. 21, Chap. 11, G. L. 1923. The board ignored this statute and refused to permit any person to inspect respondents' nomination-paper from the time it was filed, October 20, until Saturday morning, November 1, when the Mayor of the city was permitted to make a copy of it for the petitioner Mr. Dupre. After the nomination-paper was filed, Mr. Dupre repeatedly requested the clerk of the board for an opportunity to inspect the paper and was refused. The clerk testified that he was asked by Mr. Dupre, and two other candidates, for certified copies of the nomination-paper and that he refused to let them have the copies; that Mayor Paquin asked for a certified copy of the nomination-paper Saturday, November 1, and he was permitted to make a copy of it.

The clerk further testified that Mr. Dupre "was claiming right along" that the nomination-paper did not contain 50 valid names; that he agreed to give him an opportunity

Saturday afternoon, November 1, to show that there were not 50 valid names on the paper; that Saturday afternoon the board was in executive session and checked the names on the nomination-paper and found 52 valid signatures and decided to place the names of the respondents on the official ballot and refused to give Mr. Dupre an opportunity to show that some of the names were invalid.

The clerk admitted that he received a letter from Mr. Dupre dated November 3, in which he stated that he objected to the validity of the names on the nomination-paper and protested against the names of respondents being placed upon the official ballot. He also admitted that the board did not post the specimen ballot of candidates as required by law. It conclusively appears that the board did not finally decide to place respondents' names on the official ballot until Saturday afternoon, November 1. The following Monday morning Mr. Dupre's attorney appeared before this court with a petition praying for an injunction to restrain the board from placing the names of the respondents upon the official ballot. As the general election for National, State and City officials was to be held the next day the court refused to receive the petition on account of insufficient time within which to notify the members of the board and the respondents of the filing of the petition, have a hearing thereon and render a decision before the election.

It thus appears that the petitioners sought by every reasonable means to inspect the signatures on the nomination-paper and were prevented from inspecting them by the misconduct of the clerk of the board of canvassers and registration; and that as soon as possible after petitioners learned that the board had decided to place the names of the respondents on the official ballot petitioners sought to enjoin their unlawful action. For these reasons the case of *Sisson, Atty. Gen. et als.* v. *Lisle et als, supra,* does not apply to the facts in this case.

Section 23, Chapter 11, General Laws, 1923, provides that every ballot . . . "shall contain the names of all

candidates whose nominations for any offices specified in the ballot have been duly made . . . and shall contain no other names . . . ." This statute is mandatory and cannot be changed or modified by the court. By the clear and express words of this statute the respondents' names were forbidden to be placed on the official ballot, as they were not duly nominated for the offices specified in the ballot. If the petitioners had had the time and opportunity to have filed their petition in court and had a hearing thereon before election the respondents' names would have been ordered stricken from the ballot. Petitioners have acted with due diligence and are entitled to be placed in the same legal position that they would have been in if their petition for an injunction to restrain the placing of respondents' names on the ballot had been heard and decided the day before the election. To place petitioners in this position it is necessary to have a new election.

We agree with the respondents' contention that the petitioners cannot be declared elected as the result of the election held November 4, because they did not receive a plurality of the votes. The voters in the Fifth Ward were not responsible in any way for the unlawful placing of the names of the respondents upon the official ballot.

Undoubtedly the voters believed they were voting for candidates whose names were lawfully upon the ballot. In these circumstances this case comes within the rule announced in *Sanders* v. *Rice, Atty. Gen.*, 41 R. I. 127, wherein it was held that a person receiving a minority of the votes cast could not be declared elected. See also *Gill* v. *Mayor, etc., of Pawtucket*, 18 R. I. 281; *In re Corliss*, 11 R. I. 638.

Our conclusion that there must be a new election for the offices of alderman and councilmen is inevitable under the law and the facts. The law authorizing the nomination of candidates by nomination-papers is clear and explicit. A substantial compliance with its terms is easy and necessary. Respondents were at fault in not having their nomination-

*William A. Needham,* for petitioners.

*Curran, Hart, Gainer & Carr, Patrick P. Curran, Felix A. Toupin,* for respondents.