### J. W. LITTLE v. FRANKLIN T. MILES.

(Filed 10 May, 1933.)

**Constitutional Law G b: Execution K a—Execution against person of nonresident will not lie where resident would not be subject thereto.**

Under the provisions of Article IV, sec. 2, Amendment XIV, sec. 1, of the Constitution of the United States, a state may not grant to its citizens privileges or immunities not afforded to those of other states, and a nonresident may not be held liable to arrest and bail in a civil action not arising out of contract in cases where a resident of the State would not

be subject thereto, and to the extent of the discrimination C. S., 768 is void, and execution against the person of a nonresident defendant may not issue in an action for damages resulting from an automobile collision in this State where the jury does not find that the injury was wilful or wanton, since a resident defendant would not be subject thereto.

APPEAL by plaintiff from *Cowper, Special Judge,* at February Term, 1933, of RICHMOND. No error.

The plaintiff brought suit to recover damages for personal injury caused by the negligence of the defendant resulting in the collision of automobiles on a highway near Rockingham. The jury returned the following verdict:

1. Was the plaintiff injured by the negligence of the defendant as alleged in the complaint? Answer: Yes.

2. If so, were the acts of the defendant complained of, committed in a wilful and wanton manner as alleged in the complaint? Answer: No.

3. What amount of damages, if any, is plaintiff entitled to recover of the defendant. Answer: $1,250.

4. Is the defendant a nonresident of the State of North Carolina? Answer: Yes. (By consent.)

The plaintiff tendered a judgment authorizing an execution against the person of the defendant in the event of the return of an execution against the property of the defendant unsatisfied in whole or in part and his failure to pay the amount of the judgment. The court refused to sign this judgment, and adjudged that the plaintiff recover of the defendant the sum of $1,250 with interest and that the defendant, who had been held to bond under proceedings in arrest and bail, be discharged and that his bond be canceled and his sureties released from liability.

The plaintiff excepted and appealed.

*W. R. Jones for plaintiff.*
*T. D. Bryson, E. C. Bryson and Fred W. Bynum for defendant.*

ADAMS, J. On a cause of action not arising out of contract the defendant may be arrested in a suit for the recovery of damages for injury to the person which has been inflicted intentionally or maliciously—that is, when the act is characterized by fraud, wilfulness, wantonness, or criminality, but not when it is merely negligent or accidental. *Oakley v. Lasater,* 172 N. C., 96; *Weathers v. Baldwin,* 183 N. C., 276; *Coble v. Medley,* 186 N. C., 479; *Short v. Kaltman,* 192 N. C., 154; *Braxton v. Matthews,* 199 N. C., 484.

The verdict establishes the fact that the defendant's conduct was not wilful and wanton; but it is provided by statute that the defendant may be arrested in a suit for damages founded on a cause of action

not arising out of contract "where he is not a resident of the State." C. S., 768. The validity of this provision, which is the basis of the plaintiff's action, is assailed and denounced by the defendant. It will be observed, therefore, that the controversy is reduced to the single question whether a defendant who in this State has negligently injured the person of another can be subjected to proceedings in arrest and bail on the sole ground that at the time of the injury he was a nonresident of North Carolina; and this question involves the constitutionality of the contested clause of the statute.

The Constitution of the United States provides that the citizens of each State shall be entitled to all privileges and immunities of citizens in the several states, and that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States. Article IV, sec. 2; Amendment XIV, sec. 1.

The first of these provisions was designed to protect persons who were citizens of one of the States; it did not apply to citizens of the United States resident in an organized or unorganized territory of the United States. *Estate of Johnson,* 96 A. S. R., 161. The Fourteenth Amendment provided for the latter contingency. The clause quoted from Article IV, sec. 2, does not operate as a limitation of the authority of a State over its own citizens. *Cole v. Cunningham,* 133 U. S., 107, 33 L. Ed., 538; *Brown v. New Jersey,* 175 U. S., 172, 44 L. Ed., 119. As to citizens of this State the limitation is prescribed by Article I, sec. 7, of the Constitution of North Carolina prohibiting the grant of exclusive or separate emoluments or privileges but in consideration of public services; but in the second section of Article IV there is no limitation upon the right of a State to confer such immunities and privileges upon its own citizens as it may deem fit. "The clause of the Constitution under consideration is protective merely, not destructive, nor yet even restrictive. Over and over again has the highest court of the United States so construed this provision. Thus in the *Slaughterhouse cases,* 16 Wall., 36, it is said: 'The constitutional provision there alluded to did not create those rights which it called privileges and immunities of citizens of the states. . . . Nor did it profess to control the power of the state governments over the rights of its own citizens. Its sole purpose was to declare to the several states that whatever rights, as you grant or establish them to your own citizens, or as you limit or qualify or impose restrictions on their exercise, the same, neither more nor less, shall be the measure of the rights of citizens of other states within your jurisdiction.'" In the interpretation of these and similar provisions it is generally held that when a State undertakes to impose a burden upon citizens of other states not imposed upon its own citizens

such effort is void and the discrimination is of no effect. *Estate of Johnson, supra; Black v. McClung,* 172 U. S., 239, 43 L. Ed., 432.

In *Conner v. Elliot,* 18 Howard, 593, 15 L. Ed., 497, it was said to be safer and more in accordance with the duty of a judicial tribunal to leave the meaning of the words "privileges and immunities" to be determined in each case upon a view of the particular rights therein asserted and denied; but the term has been defined with sufficient accuracy to justify its application to the facts in this case. The courts have generally accepted and followed the definition given by *Washington, Circuit Justice,* in *Corfield v. Coryell,* 4 Wash. C. C., 371, 6 Fed. Cases, 546. He observed in the course of his opinion that Article IV, section 2, relates to privileges and immunities which are fundamental in their nature; which belong of right to the citizens of all free governments; and which have at all times been enjoyed by the citizens of the several states from the time of their becoming free, independent, and sovereign. Among these principles he enumerated protection by the government, the enjoyment of life and liberty, and the right of a citizen of one state to pass through or reside in any other state, remarking that the clause referred to was calculated "the better to secure and perpetuate mutual friendship and intercourse among the people of the different states." Similarly the purpose and scope of the clause were pointed out in *Paul v. Virginia,* 8 Wallace, 168, 19 L. Ed., 357: "It was undoubtedly the object of the clause in question to place the citizens of each state upon the same footing with citizens of other states, so far as the advantages resulting from citizenship in those states are concerned. It relieves them from the disabilities of alienage in other states; it inhibits discriminating legislation against them by other states; it gives them the right of free ingress into other states, and egress from them; it insures to them in other states the same freedom possessed by the citizens of those states in the acquisition and enjoyment of property and in the pursuit of happiness; and it secures to them in other states the equal protection of their laws."

It is obviously the purpose of this clause of the Constitution to confer upon citizens of the several states the privileges and immunities which citizens of the same State should be entitled to under similar circumstances, including the right of traveling in any other state subject, of course, to the laws applicable to its own citizens. *Commonwealth v. Milton,* 54 A. D., 522, 529. An Ohio statute made the nonresidence of a debtor a ground of arrest in a civil action; but in its interpretation the Court confined the operation of the statute to persons other than citizens of the United States, holding that the arrest of a citizen of another state for nonresidence only would be a violation of the Federal Constitution. *Morrow v. Finch,* 1 Ohio Dec. (Reprint), 7 Wes. Law Journal, 144.

A nonresident of the State may be arrested here in a civil action in like manner with a resident for sufficient cause (C. S., 768 *et seq.*); but he may not be arrested and held to bail in a civil action instituted in this State for no cause other than that of his nonresidence. For mere negligent injury to the person a resident of North Carolina is not subject to the provisional remedy of arrest and bail; to subject a nonresident to liability on the sole ground of his nonresidence would transgress his right of free ingress and egress and would abrogate his constitutional guaranty of immunity.

No error.