**DUEHAY et al. v. ACACIA MUT. LIFE INS. CO. et al.**

No. 7183.

United States Court of Appeals for the District of Columbia.

Decided May 29, 1939.

John E. Laskey, of Washington, D. C., for appellant Duehay.

P. J. J. Nicolaides, of Washington, D. C., for appellant Franklin Liquidating Trust.

Roger J. Whiteford and P. H. Marshall, both of Washington, D. C., for appellee Acacia Mut. Life Ins. Co.

Swagar Sherley, Charles F. Wilson, and H. B. Weaver, Jr., all of Washington, D. C., for appellee Hardee.

Tracy L. Jeffords, of Washington, D. C., for appellee Watkins-Whitney Co.

Milton W. King and Bernard I. Nordlinger, both of Washington, D. C., for appellee Randall H. Hagner & Co., Inc.

William J. Rowan, of Washington, D. C., for appellee McIntosh.

Frederic N. Towers, of Washington, D. C., for appellee Liberty Nat. Bank.

Leon Tobriner, Selig C. Brez, and Walter N. Tobriner, all of Washington, D. C., for appellee Griffith-Consumers Co.

Before GRONER, Chief Justice and MILLER and VINSON, Associate Justices.

MILLER, Associate Justice.

On May 17, 1934, Francis H. Duehay, a resident of Fairfax County, Virginia, died intestate. His widow, Edith G. Duehay, appellant herein, was appointed, in Fairfax County, administratrix of decedent's estate and, thereafter, on August 9, 1934, was appointed ancillary administratrix of the estate in the District of Columbia. The estate was insolvent, the only material asset being the sum of $13,333.34, compensation for services rendered by decedent as one of the receivers of The Shoreham Hotel Corporation. This sum was paid over to appellant in the District as ancillary administratrix.

Claims of creditors residing or doing business in the District of Columbia, in the amount of over $300,000, were probated in the ancillary administration. Claims of Virginia creditors, amounting to over $14,000, were presented to the administratrix in the Virginia court. Of the claims probated in the District, over $129,000 were based upon judgments obtained against the decedent in the courts of the District prior to his death. Priority in payment was demanded by these judgment creditors under the law of the District of Columbia, which provides:

"*Priorities.*—In paying the debts of a decedent, after the payment of funeral expenses according to the condition and circumstances of the deceased, not exceeding six hundred dollars, an executor or administrator shall observe the following rules: Claims for rent in arrear against deceased persons, for which an attachment might be levied by law, shall have preference. Judgments and decrees of courts in the District of Columbia shall next be wholly discharged. * * *"[1]

Appellant, as ancillary administratrix, commenced the present suit against the judgment creditors and others in the court below to determine the law under which the estate should be administered and the assets paid over to creditors. She alleged in her bill that the applicable law was that of Virginia, the decedent's domicil, and that since judgment creditors were not preferred thereunder, the claims of priority of such creditors in the ancillary proceedings in the District were not well founded. The lower court, to the contrary, found that the law of the District of Columbia controls payment of debts of a decedent out of local assets and, therefore, that judgment creditors were entitled to priority. 66 Wash.L.Rep. 162. From the decree entered against the administratrix, this appeal was taken by her and by the Franklin Liquidating Trust, assignee of The Franklin National Bank. The latter neither filed a brief in this court nor participated in the argument, and the former, alone, is referred to herein as appellant.

The decision of the lower court was correct. One of the principal objects of an ancillary administration is the collection and preservation of local assets for the benefit of local creditors.[2] No state need allow property of a decedent to be taken from within its borders until debts due such creditors have been satisfied. Baker v. Baker, Eccles & Co., 242 U.S. 394, 401, 37 S.Ct. 152, 61 L.Ed. 386. The long established rule is that "in regard to creditors the administration of assets of deceased persons is to be governed altogether by the law of the country where the executor or administrator acts, and from which he derives his authority to collect them, and not by that of the domicil of the deceased."[3] Hence, the meth-

---

[1] D.C.Code, 1929, tit. 29, § 210.

[2] See Maas v. German Savings Bank, 176 N.Y. 377, 381, 68 N.E. 658, 659; Murphy v. Crouse, 135 Cal. 14, 19, 66 P. 971, 973, 87 Am.St.Rep. 90; Miller's Estate, 3 Rawle, Pa., 312, 319, 24 Am. Rep. 345.

[3] Story, Conflict of Laws (8th Ed. 1883) §§ 524, 525. See Goodall v. Marshall, 11 N.H. 88, 92, 93, 35 Am.Dec. 472; Deringer's Adm'r v. Deringer's Adm'r, 5 Houst., Del., 416, 432, 1 Am.St.Rep. 150; Andrews v. Avory, 14 Grat., Va., 229, 240, 241, 73 Am.Dec. 355; Wilson v. Hartford Fire Ins. Co., 8 Cir., 164 F. 817, 818, 19 L.R.A.,N.S., 553; In re Kloebe, 28 Ch.D., Eng., 175, 177; 1 Woerner, American Law of Administration (3d ed. 1923) § 166; 3 Beale, Conflict of Laws (1935) §§ 497.1, 501.1–503.1; Restatement, Conflict of Laws (1934) § 497 (b); Note, 35 Am.Dec. 483, 486.

od of proving claims, the priority and payment of debts, the marshalling of assets, are all matters regulated by the law of the place of appointment.[4] This was early settled in this jurisdiction by the case of Smith v. Union Bank, 5 Pet. 518, at page 524, 8 L.Ed. 212, where the Court adopted, for purposes of decision, the following language from Harrison v. Sterry:[5] "In the familiar case of the administration of the estate of a deceased person, the assets are always distributed *according to the dignity of the debt,* as regulated by the law of the country where the representative of the deceased acts, and from which he derives his power * * *." [Italics supplied] Appellant contends, however, that the Union Bank case was overruled by Harrison v. Nixon, 9 Pet. 483, 9 L.Ed. 201. But the two cases are easily distinguishable. The latter case did not decide, nor did it discuss, the question settled by the earlier decision. Appellant relies particularly upon the following language in Harrison v. Nixon, 9 Pet. at page 504, 9 L.Ed. 201: "In regard to personalty in an especial manner, the law of the place of the testator's domicile governs in the *dis*tribution thereof, and will govern in the interpretation of wills thereof * * *." In using this language, however, the Court referred to distribution to next of kin and legatees, not to payment of debts to creditors. The distinction is clearly recognized in the cases and in the texts.[6]

Further to support her contention that the law of the domicil governs the present case, appellant refers to the provision of the District Code which permits persons who have been granted letters testamentary or of administration in foreign jurisdictions to maintain suits and recover claims in the District "in the same manner as if the letters testamentary or of administration had been granted * * * in the said District * * *." D.C.Code, 1929, tit. 29, § 255. However, nothing contained therein reveals an intention on the part of Congress to abandon the well established principle of law which governs ancillary administrations. Nor do the authorities relied upon by appellant support such a result.[7] Here again the cases recognize the rule that *distribution* to heirs, devisees and legatees is governed by the law of the domicil, but they do not even suggest that the same rule applies to payment of debts. The privilege afforded non-resident administrators and executors to sue in the courts of the District is merely a qualification of the established rule restricting the authority of the administrator to the state of appointment. The granting of such a privilege is a "matter of comity, which every nation is at liberty to yield or to withhold, according to its own policy and pleasure, with reference to its own institutions and the interests of its own citizens." Vaughan v. Northup, 15 Pet. 1, 5, 10 L.Ed. 639. Congress limited the privilege under circumstances such as exist in the present case by the further language of Section 255: "* * * *Provided, nevertheless,* That the probate court of the District shall have the power, upon the *petition of anyone interested,* to require from such * * * [foreign administrator or executor] the security required by law in like cases from a resident administrator or executor, *or the said court may grant auxiliary or ancillary letters,* as the case may require, to the same or other persons." [Italics supplied in part][8] Manifestly, the very purpose and function of the proviso was to protect local creditors, if there were any,

---

[4] Restatement, Conflict of Laws (1934) §§ 497–499; 3 Beale, Conflict of Laws (1935) §§ 497.1, 501.1. See Holmes v. Remsen, 20 Johns., N.Y., 229, 265, 11 Am.Dec. 269.

[5] 5 Cranch. 289, 299, 3 L.Ed. 104.

[6] Owsley v. Bowden, 161 Ga. 884, 132 S.E. 70, 44 A.L.R. 795; Garland v. Rowan, 2 Smedes & M., Miss., 617, 635; De Sobry v. De Laistre, 2 Har. & J., Md., 191, 224, 3 Am.Dec. 535; Goodall v. Marshall, 11 N.H. 88, 93, 35 Am.Dec. 472; Andrews v. Avory, 14 Grat., Va., 229, 240, 73 Am.Dec. 355. See Note, 35 Am. Dec. 483, 486; 1 Woerner, American Law of Administration (3d ed. 1923) §

166; 3 Beale, Conflict of Laws (1935) § 465.1.

[7] United States for Use of Mackey v. Coxe, 18 How. 100, 15 L.Ed. 299; Wilkins v. Ellett, 9 Wall. 740, 19 L.Ed. 586; Wilkins v. Ellett, 108 U.S. 256, 258, 2 S. Ct. 641, 27 L.Ed. 718; Wyman v. Halstead, 109. U.S. 654, 3 S.Ct. 417, 27 L. Ed. 1068; Bryan v. Curtis, 30 App.D.C. 234.

[8] See Mersch, Probate Court Practice in the District of Columbia (1939) 28: "In practice, there is no procedure provided for the probate court thus to require a foreign fiduciary to give security, except through the method of taking out ancillary letters."

by requiring the administrator to retain the assets within the jurisdiction and to administer them according to local law. Otherwise, the opportunity of those creditors to enforce their claims against local assets would be destroyed. This is particularly true where, as here, the estate is insolvent. The fact that the ancillary administrator is appointed in the District at the instance of the domiciliary administrator rather than upon petition of another interested person is immaterial. Consequently, whatever rights and privileges the administratrix might have acquired in the present case, under the statute giving permission to the domiciliary representative to sue in the courts of the District, it is clear that they would have been subordinate to her powers and duties as an ancillary administratrix, because in the latter capacity she is paramount to and independent of the former—so far as concerns assets of the estate within the District—[9] even though the two chance to be combined, in fact, in one person.[10]

Appellant next contends that, in any event, the judgment creditors are not entitled to priority of payment under Section 210 of Title 29 of the Code because that section is applicable only to domiciliary administrations. Her argument proceeds upon the theory that the law applicable to the administration of estates in the District is designed primarily for estates of decedents domiciled in the District and that, consequently, many of its provisions —including Section 210—must be limited accordingly. With this we cannot agree. While a proceeding such as the present is denominated ancillary, the administrator is appointed therein in the usual manner and his position in most respects is the same as if he were in fact a domiciliary administrator. In our opinion, the statutes are equally applicable, at least so far as they are pertinent, to the administration of all estates in the District, whether domiciliary or ancillary. Cf. In re Pic-

quet, Appellant, 5 Pick., Mass., 65, 66. Nor is there anything in the language of the statutes which lends support to the construction for which appellant contends. The fact that Section 210 of Title 29 of the Code gives priority to the payment of funeral expenses affords no reason for confining its applicability to domiciliary administrations. As the lower court said: "Cases may well be imagined where a person domiciled elsewhere, and who has assets in this District, dies here, and local morticians, in preparing the body for shipment, become creditors of the estate and file their claims here with the ancillary administrator." 66 Wash.L.Rep. 162, 163. Moreover, carried to its logical conclusion, appellant's contention would concede to the local probate court jurisdiction to grant ancillary letters but would deny its authority to supervise the management of the estate, the settlement of accounts, or the disposition of the assets; for, aside from the general provisions which appellant contends apply only to domiciliary administrations, there are no provisions governing ancillary administrations. As the powers of the probate court are strictly limited,[11] adoption of the statutory interpretation contended for by appellant would strip it of all powers except the naked power of appointment. We cannot accede to such an interpretation.

Appellant contends, further, that the applicable laws of the District of Columbia are unconstitutional. The theory of this contention is as follows: (1) Section 210 of Title 29, gives preference in paying the debts of a decedent to creditors who have reduced their claims to judgment in the District of Columbia; (2) Section 191 of Title 29, provides that on the death of a person not domiciled in the District "so much of his real and personal estate in the District of Columbia as may be necessary for the payment and discharge of just claims against him of creditors and persons domiciled in the District

9 Stacy v. Thrasher, 6 How. 44, 59, 60, 12 L.Ed. 337; Ingersoll v. Coram, 211 U. S. 335, 362, 363, 29 S.Ct. 92, 53 L.Ed. 208; Brown v. Fletcher's Estate, 210 U. S. 82, 90, 91, 28 S.Ct. 702, 52 L.Ed. 966. See Hare v. Pendleton, Tex.Civ.App., 214 S.W. 948, 953, 954, reversed on other grounds, Tex.Com.App., 231 S.W. 334; Dolan v. Anthony, 51 R.I. 181, 152 A. 873; Wilson v. Hartford Fire Ins. Co., 8 Cir., 164 F. 817, 820, 19 L.R.A.,N.S., 553; Murphy v. Crouse, 135 Cal. 14, 19,

66 P. 971, 973, 87 Am.St.Rep. 90; 3 Beale, Conflict of Laws (1935) §§ 465.1, 466.1.

10 See Baker v. Cooper, 166 Md. 1, 8, 9, 170 A. 556, 558, 559, and authorities there cited.

11 See D.C.Code, 1929, tit. 18, § 132: "The said probate court shall not, under pretext of incidental power, or constructive authority, exercise any jurisdiction whatever not expressly given by this code * * *."

of Columbia shall also be the subject of administration under authority and direction of the probate court * * *"; (3) assuming that nonresident creditors should reduce their claims to judgment in the District and thereafter present them to the administratrix for payment, they would not be entitled to the same preferential treatment as resident creditors; because (4) Section 191 limits administration thereunder to so much of decedent's estate as may be necessary to pay claims of resident creditors; or (5) if Section 191 means that local creditors are not to be compelled to follow local assets into the jurisdiction of domiciliary administration in order to share therein, it is discriminatory even to require foreign creditors to come into this jurisdiction in order to assert their rights and gain equal standing with local creditors; hence, the fact "that such foreign citizens may come here, and may reduce their claims to judgment in our Courts, is no answer, because our citizens, under Section 260 [191], are not required to go to any other jurisdiction to assert theirs."; (6) consequently, if the pertinent sections are properly susceptible of the interpretation thus suggested by appellant they are discriminatory against foreign creditors, either if they do come into the District and reduce their claims to judgment, or if they do not.

From her brief we are unable to determine whether appellant's contention of unconstitutionality is founded upon the full faith and credit clause or upon the privileges and immunities clause. She cites Section 1 of Article IV of the Constitution, but relies on a case which interprets Section 2 of that Article. The only basis for contending that the first section is applicable would be that the courts of the District of Columbia are required, by the pertinent sections of the Code, to refuse to give full faith and credit to foreign judgments. There are two answers to that contention.

■ In the first place, the record fails to show whether there are any non-resident judgment creditors in the present case. Appellant says in her brief: "All the judgment creditors in this case reside *or do business* in the District of Colum-

bia." [Italics supplied] The record says: "Claims of creditors residing *or doing business* in the District of Columbia * * * were probated against said estate in said ancillary administration." [Italics supplied] If the fact is that there are no non-resident judgment creditors, then no person comes within the hypothesis stated and the attempted attack upon the constitutionality of the law must fail for that reason alone. Under such circumstances appellant has no standing in the courts to make the contention which is here made. As was said in Wallace v. Ganley, 68 App. D.C. 235, 239, 95 F.2d 364, 368: "It is well settled that the courts will hear objections to the constitutionality of laws only from those who are themselves affected by its alleged unconstitutionality, and efforts of litigants to plead the rights of others who are claimed to be so affected have been uniformly rejected."[12] If, on the other hand, the fact is that some of the judgment creditors are non-resident, the answer to appellant's contention is that no discrimination has been practiced against such non-resident creditors in the present case; and for that reason also there is no person before us with a sufficient interest to challenge the constitutionality of the law.

■ Moreover, this phase of appellant's contention lacks substance on the merits. What it boils down to is a denial of power in a state to administer and dispose of the assets of a non-resident decedent, located within its borders, according to its own laws; because to do so would impose upon non-resident creditors, who wish to share in such assets, the burden and inconvenience of reducing their claims to judgment within the District, or, failing to do so, presenting them for probate in the ancillary administration and submitting to the order of payment of debts—prescribed by the law of the District—along with resident creditors who have themselves failed to reduce their claims to judgment in the District. The full faith and credit clause contemplates no such limitation on state power.[13] In McElmoyle ex rel. Bailey v. Cohen, 13 Pet. 312, 330, 10 L.Ed. 177, the Court, in rejecting a similar contention, said: "We therefore think, in the payment

---

[12] See also, Jeffrey Mfg. Co. v. Blagg, 235 U.S. 571, 576, 35 S.Ct. 167, 59 L. Ed. 364, and cases there cited; Blackmer v. United States, 284 U.S. 421, 442, 52 S.Ct. 252, 76 L.Ed. 375.

[13] See Clark v. Williard, 294 U.S. 211, 213, 55 S.Ct. 356, 79 L.Ed. 865, 98 A. L.R. 347.

of debts of a testator or intestate, in Georgia, that the judgment of another State, whatever may be the subject matter of the suit, cannot be put upon the footing of judgments rendered in that State, and that it can only rank for that purpose as a simple contract debt."

■ Assuming that appellant intended to found her attack upon the privileges and immunities clause, there are at least three reasons why it must fail. In the first place, Section 2 of Article IV is inapplicable to. the District of Columbia. It is a limitation upon the powers of the states and in no way affects the powers of Congress over the territories and the District of Columbia.[14] Although Section 1 of Article IV has been incorporated into the law of the District by statute,[15] no similar action has been taken with regard to Section 2 thereof.

■ In the second place, there is no person before us who has a sufficient interest to challenge the constitutionality of the statute. As heretofore pointed out— and although the suit is titled in her name as administratrix, both domiciliary and ancillary—appellant is suing in the present case as ancillary administratrix. She could appear for the purposes of the present suit only in that capacity. Although Section 255 of Title 29 of the Code authorizes a domiciliary administratrix to sue in the courts of the District of Columbia, it limits the purposes of such suits and, by implica-

tion at least, limits exercise of the power to situations in which no ancillary administration has been granted in the District. Thus, under no theory can it be said that appellant is acting in the present case as domiciliary administratrix; and hence, under no theory that she is acting as the representative of any creditors other than those who have filed their claims in the ancillary proceedings. Consequently, there is no one before us with sufficient interest to challenge constitutionality. Wallace v. Ganley, supra.

■ Moreover, in the third place, the contention is unsound upon the merits. The disputed sections of the Code are not void for unconstitutionality. The constitutional guaranty created by Section 2 of Article IV inures to the benefit of a citizen of one state to the extent of forbidding only such legislation as will put him into "a condition of alienage when he is within or when he removes to another state, or when asserting in another state the rights that commonly appertain to those who are part of the political community known as the People of the United States * * *."[16] On the other hand, there are privileges which may be accorded by a state to its own citizens, but which may not be enjoyed by citizens of other states "except in conformity to such reasonable regulations as may be established by the state."[17] The privileges and immunities clause does not profess to limit or control the power of a

---

[14] U.S.Const. art. I, § 8, cl. 17, U.S. C.A.; Haavik v. Alaska Packers' Ass'n., 263 U.S. 510, 515, 44 S.Ct. 177, 68 L. Ed. 414; McFadden v. Blocker, 3 Ind. T. 224, 54 S.W. 873, 58 L.R.A. 894; Little v. Miles, 204 N.C. 646, 169 S.E. 220; In re Johnson's Estate, 139 Cal. 532, 540, 73 P. 424, 427, 96 Am.St.Rep. 161. See Hepburn & Dundas v. Ellzey, 2 Cranch. 445, 452, 2 L.Ed. 332; Baltimore & O. Railroad Co. v. Harris, 12 Wall. 65, 86, 20 L.Ed. 354; Downes v. Bidwell, 182 U.S. 244, 259, 21 S.Ct. 770, 45 L.Ed. 1088; Hooe v. Jamieson, 166 U. S. 395, 397, 17 S.Ct. 596, 41 L.Ed. 1049, all holding that a citizen of the District of Columbia is not a citizen of a state within the meaning of the Constitution. New Orleans v. Winter, 1 Wheat. 91, 94, 4 L. Ed. 44: "It has been attempted to distinguish a territory from the District of Columbia; but the court is of opinion that this distinction cannot be maintained. They 'may differ in many respects, but neither of them is a state, in the sense in which that term is used in the con-

stitution. Every reason assigned for the opinion of the court, that a citizen of Columbia was not capable of suing in the courts of the United States, under the judiciary act, is equally applicable to a citizen of a territory." Cf. Pope v. Williams, 98 Md. 59, 56 A. 543, 66 L.R.A. 398, 103 Am.St.Rep. 379, affirmed, 193 U. S. 621, 24 S.Ct. 573, 48 L.Ed. 817.

[15] R.S. §§ 905, 906, 28 U.S.C.A. §§ 687, 688. See Embry v. Palmer, 107 U.S. 3, 2 S.Ct. 25, 27 L.Ed. 346; Atchison, Topeka and Santa Fe Ry. v. Sowers, 213 U. S. 55, 64, 65, 29 S.Ct. 397, 53 L.Ed. 695.

[16] Blake v. McClung, 172 U.S. 239, 256, 19 S.Ct. 165, 172, 43 L.Ed. 432.

[17] Blake v. McClung, supra note 16. See also, La Tourette v. McMaster, 248 U.S. 465, 39 S.Ct. 160, 63 L.Ed. 362; Paul v. Virginia, 8 Wall. 168, 19 L.Ed. 357; Ferry v. Spokane, Portland & Seattle Ry. Co., 258 U.S. 314, 318, 42 S. Ct. 358, 66 L.Ed. 635, 20 A.L.R. 1326; Haavik v. Alaska Packers' Ass'n., 263 U.S. 510, 44 S.Ct. 177, 68 L.Ed. 414.

state over its own citizens, but, on the contrary, leaves to it freedom to grant to its citizens such privileges as it may choose. "Its sole purpose was to declare to the several States, that whatever those rights, as you grant or establish them to your own citizens, or as you limit or qualify, or impose restrictions on their exercise, the same, neither more nor less, shall be the measure of the rights of citizens of other States within your jurisdiction."[18] Neither does it intimate that to avoid unconstitutionality a state must, when conferring a privilege or immunity upon its own citizens, also in terms confer the same privilege or immunity upon citizens of other states.[19] Blake v. McClung, 172 U.S. 239, 19 S.Ct. 165, 43 L.Ed. 432, relied upon by appellant, does not announce a different rule. There, the Supreme Court held the statute in question unconstitutional, on the ground that it gave local creditors, upon dissolution of foreign corporations, an express preference over non-resident creditors in the distribution of corporate assets. It recognized in the following language, and clearly distinguished, the power here challenged: "Beyond question, a state may, through judicial proceedings, take possession of the assets of an insolvent foreign corporation within its limits, and distribute such assets or their proceeds among creditors according to their respective rights." 172 U.S. at page 247, 19 S.Ct. at page 168, 43 L.Ed. 432. See also, Brown v. Fletcher's Estate, 210 U.S. 82, 90, 28 S.Ct. 702, 52 L.Ed. 966. The constitutional requirement is satisfied, in a case like the present, if the non-resident is given access to the courts of the state upon terms which in themselves are reasonable and adequate for the enforcing of any rights he may have, even though they may not be technically and precisely the same in extent as those accorded to resident citizens.[20]

Unlike the statute involved in Blake v. McClung, supra, Section 191 of Title 29 of the District of Columbia Code, properly construed, does not give an unconstitutional preference to local creditors over non-resident creditors. An examination of the language of the section reveals that it may, without difficulty, be given a constitutional construction.[21] The section reads in part as follows:

"On the death of any person not domiciled in the District of Columbia at the time of his death so much of his real and personal estate in the District of Columbia as may be necessary for the payment and discharge of just claims against him of *creditors and persons* domiciled in the District of Columbia shall *also* be the subject of administration under authority and direction of the probate court, *irrespective of the personal estate of such decedent at his place of domicile or elsewhere * * *.*" [Italics supplied]

This does not result, as appellant contends, in making the section operative " * * * not upon all the non-resident's assets in the District of Columbia, but only upon 'so much' as may be necessary * * *." The section goes on to provide that this designated portion *shall also* be the subject of

---

18 Slaughter-House Cases, 16 Wall. 36, 77, 21 L.Ed. 394; United States v. Harris, 106 U.S. 629, 643, 644, 1 S.Ct. 601, 27 L.Ed. 290.

19 In re Johnson's Estate, 139 Cal. 532, 536, 73 P. 424, 426, 96 Am.St.Rep. 161:. "It nowhere intimates that an immunity conferred upon citizens of a state, because not in terms conferred upon citizens of sister states, shall therefore be void. * * * It leaves to the state perfect freedom to grant such privileges to its citizens as it may see fit, but secures to the citizens of all the other states, by virtue of the constitutional enactment itself, the same rights, privileges, and immunities."

20 Canadian Northern Ry. v. Eggen, 252 U.S. 553, 562, 40 S.Ct. 402, 64 L.Ed. 713. See also, Blake v. McClung, 172 U.S. 239, 256, 19 S.Ct. 165, 43 L.Ed. 432.

21 See National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 30, 57 S.Ct. 615, 621, 81 L.Ed. 893, 108 A.L.R. 1352: "The cardinal principle of statutory construction is to save and not to destroy. We have repeatedly held that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the act. Even to avoid a serious doubt the rule is the same. Federal Trade Comm'n v. American Tobacco Co., 264 U.S. 298, 307, 44 S.Ct. 336, 337, 68 L.Ed. 696, 32 A.L.R. 786; Panama R. Co. v. Johnson, 264 U.S. 375, 390, 44 S.Ct. 391, 395, 68 L.Ed. 748; Missouri Pacific R. Co. v. Boone, 270 U.S. 466, 472, 46 S.Ct. 341, 343, 70 L.Ed. 688; Blodgett v. Holden, 275 U.S. 142, 148, 276 U.S. 594, 48 S.Ct. 105, 107, 72 L.Ed. 206; Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 346, 48 S.Ct. 194, 198, 72 L.Ed. 303."

administration. The only way in which it can be subjected to administration in the District is by ancillary proceedings. The purpose of the section is obviously not to *limit* ancillary administration to *such part* of the estate but is, instead, merely to supplement Section 255, which provides:

" * * * That the probate court of the District shall have the power, *upon the petition of anyone interested,* to require from such person or persons the security required by law in like cases from a resident administrator or executor, or the said court may grant auxiliary or ancillary letters, *as the case may require, to the same or other persons."* [Italics supplied]

Again, it will be observed, that Section 191 speaks of *"creditors and persons domiciled in the District * * *."* A reasonable interpretation of this language would seem to be "all creditors, wherever domiciled, and other persons domiciled in the District." If the intention of Congress had been to limit the ancillary administration to creditors domiciled in the District, it would have been unnecessary to add the words *and persons.* See Montclair Twp. v. Ramsdell, 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431. Again, the section goes on to say " * * * irrespective of the personal estate of such decedent at his place of domicile or elsewhere * * *." This language seems clearly to contemplate that, if possible, in the process of ancillary administration the claims of *all* creditors who present their claims therein shall be settled, whether or not the personal estate of the decedent located in other states may be sufficient for that purpose. In fact, as we read Section 191 we are impressed with the thought that perhaps Congress may have intentionally so drafted it as to avoid any suggestion of unconstitutionality; because we find—as we would expect to find if it had that intention—language carefully calculated to produce just that result.

▉▉▉ Appellant next urges that since the entire estate is known to be insolvent, the court should apply the equitable principle of marshalling of assets for the benefit of all creditors regardless of their residence and without regard to any preference which

may be given to one species of debt over another. Although this procedure has been adopted and followed by some jurisdictions, both by statute and by judicial decision,[22] a contrary statutory procedure has been prescribed for the District, and for that reason, as well as the soundness of the contrary point of view, we must give effect to the preferences allowed by Section 210, whether the decedent's estate is solvent or insolvent.[23] Clearly, the intendment of the statute is to prefer one class of creditors over another where there may be insufficient assets to discharge all debts. We cannot give a different interpretation to the local provision.

▉▉▉ It is finally contended that the decedent's right to compensation as receiver of The Shoreham Hotel Corporation was, at most, a chose in action which had a determinate situs in Virginia, the decedent's domicil, under the maxim mobilia sequuntur personam; that title thereto vested in the domiciliary administratrix as of the date of decedent's death; consequently, that the law of Virginia, rather than the law of the District, governs the disposition of the property. Appellant relies strongly upon the case of Blodgett v. Silberman, 277 U.S. 1, 9, 10, 48 S.Ct. 410, 72 L.Ed. 749. That case, however, pertains to the power of the state of a decedent's domicil to impose a tax upon his intangible property. The Court there did not consider the question here involved, i. e., whether an intangible may have a situs, separate and apart from the domicil of its owner, for the purposes of administration. The rule as laid down in the Silberman case is not free from exceptions, even in the field of taxation. See Wheeling Steel Corp. v. Fox, 298 U.S. 193, 210, 56 S.Ct. 773, 80 L.Ed. 1143. We think it is not applicable here. Justice Stone, concurring in United States v. Belmont, 301 U.S. 324, 334, 57 S. Ct. 758, 762, 81 L.Ed. 1134, said recently: "The chose in action is so far within the control of the state as to be regarded as located there for many purposes."[24] Wyman v. Halstead, 109 U.S. 654, 656, 3 S.Ct. 417, 418, 27 L.Ed. 1068, cited by the learned Justice as authority for his statement,

---

[22] See Dawes v. Head, 3 Pick., Mass., 128; Richardson v. Vick, 125 Tenn. 532, 145 S.W. 174; R. W. Smith & Co. v. Mallory's Ex'r., 24 Ala. 628; 1 Woerner, American Law of Administration (3d ed. 1923) § 167.
[23] Goodall v. Marshall, 11 N.H. 88, 100,

101, 35 Am.Dec. 472. See Second Nat. Bank v. Blauvelt, 44 N.J.Eq. 173, 175, 14 A. 618, 619; Gray v. Black, Tex.Civ. App., 267 S.W. 291, reversed on other grounds, Tex.Com.App., 280 S.W. 573.
[24] Restatement, Conflict of Laws (1934) §§ 108, 213.

holds: "The general rule of law is well settled that for the purpose of founding administration, all simple contract debts are assets at the domicile of the debtor. * * *"[25] This we think is a salutary rule.

The decree of the lower court is

Affirmed.

[25] See Baker v. Baker, Eccles & Co., 242 U.S. 394, 400, 37 S.Ct. 152, 61 L.Ed. 386; Robinson v. First Nat. Bank, 5 Cir., 55 F.2d 209; Vogel v. New York Life Ins. Co., 5 Cir., 55 F.2d 205, 208, certiorari denied, 287 U.S. 604, 53 S.Ct. 9, 77 L.Ed. 525; Buchanan and Myers, The Administration of Intangibles in View of First National Bank v. Maine, 48 Harv.L.Rev. 911, 937. Cf. In re Estate of Henry Coit, 3 App.D.C. 246; McKennon v. McFall, 127 Tenn. 393, 406, 407, 155 S.W. 158, 162.